**In re Eddie CHAPMAN, Jr., Debtor.**

**Bankruptcy No. 92 B 2609.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 8, 1992.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

### FACTS

Eddie Chapman, Jr. ("Debtor") filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 5, 1992. Among Mr. Chapman's unsecured debts were student loans in the amount of some $10,360, consumer debts guaranteed by friends or relatives, and other routine unsecured debts. The debtor's proposed Chapter 13 plan provides for three classes of unsecured debts. One class consists of the co-signed debts, one class of student loans, and the third class of all the other unsecured debts. Under the plan, the first two classes would be repaid in full over the course of the plan, while the other unsecured claims would receive only ten percent.

The Chapter 13 trustee has filed a written objection to confirmation of the plan. Although phrased in terms of bad faith, see, 11 U.S.C. § 1325(a)(3), *Matter of Smith*, 848 F.2d 813 (7th Cir.1988); *In re Rimgale*, 669 F.2d 426 (7th Cir.1982), in essence, the trustee's objection is based on unfair discrimination between the debtor's plan's treatment of student loan claims and its treatment of general unsecured claims. See, 11 U.S.C. § 1322. The question before the court is simple to state, *i.e.*, whether a Chapter 13 debtor can place nondischargeable student loan obligations in a special class and pay this class more than other unsecured claims, so that when the debtor receives his discharge after completing the payments called for by the plan, his fresh start is not hindered by a significant amount of unpaid nondischargeable student loan debt that the debtor will have to deal with after bankruptcy. The question may be simple to state. The answer to the question is not nearly so simple to identify.

### JURISDICTION AND PROCEDURE

The court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b) as a matter arising, inter alia, under 11 U.S.C. § 1325. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) as a matter involving confirmation of a plan. The matter is before the court under Local Rule 2.33 of the United States District Court for the Northern District of Illinois, automatically referring bankruptcy matters to this court for hearing and determination.

### DISCUSSION

If Mr. Chapman had filed his Chapter 13 petition in 1989, this issue would probably not be before the court because at that time student loans that were not dischargeable in a Chapter 7, 11 or 12 case but were dischargeable in a Chapter 13 case.[1] Indeed, before the 1990 changes,

---

1. The pre–1990 versions of the relevant Code sections provided:

Section 523

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents....

Section 727(b)

Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

Section 1141(d)(2)

debtors often chose Chapter 13 over Chapter 7 in order to be able to discharge student loans for a few cents on the dollar. *See, In re Estus,* 695 F.2d 311 (8th Cir. 1982). However, in 1990, Congress amended the Bankruptcy Code to apply § 523(a)(8) to Chapter 13 cases and make student loan obligations nondischargeable in a Chapter 13 case as well as in a Chapter 7, 11 or 12.[2] Student Loan Default Prevention Initiative Act of 1990, Pub.L. 101–508 (eff. Nov. 5, 1990). *See,* § 523(a)(8), § 1328(a)(2). What the court must resolve is the question of whether the nondischargeability of student loan debt allows the debtor to separately classify the claim of the Illinois Student Assistance Commission and pay this class more than other unsecured claim classes.

There is no Seventh Circuit decision resolving this question. However, the Seventh Circuit has twice suggested in dicta that nondischargeable debts can be separately classified and paid more than other classes of claims. *See, In re Rimgale,* 669 F.2d 426, 433 (7th Cir.1982); *Matter of Smith,* 848 F.2d 813, 817 (7th Cir.1988). However, both *Rimgale* and *Smith* involve the situation where a debtor guilty of the type of intentional misconduct that apparently would make a debt nondischargeable under § 523(a)(2), (4) or (6) in a Chapter 7 case, sought to discharge the same debts in a Chapter 13 for a few cents on the dollar. Both *Rimgale* and *Smith* stand for the proposition that bad facts make bad dictum.

The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title. Section 1328(a)
As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
(1) provided for under section 1322(b)(5) of this title; or
(2) of the kind specified in section 523(a)(5) of this title.

In *Rimgale,* the debtor sought to avoid paying a nearly $50,000 intentional tort judgment in full. The debtor, together with his wife, gained the trust of a 26–year old widow receiving psychiatric care and subsequently found incompetent. After gaining her trust, the debtor and his wife prevailed upon the widow to turn over to them the proceeds of her late husband's life insurance policy. A tort suit on behalf of the widow was instituted against the debtor and his wife. Judgment was entered against them for some $34,000 for which they were jointly and severally liable, and an additional $13,500 against the husband individually. The husband filed a Chapter 13 case. The debtor's original Chapter 13 plan provided for no payment to the widow, the tort judgment creditor. In the debtor's second amended plan, the debtor proposed to treat approximately one-half of the claim as secured and to satisfy the secured claim in full from the sale of his house, and to treat the other half of the claim as unsecured, and pay 11 cents on the dollar on the unsecured claim. The bankruptcy court confirmed this plan, and the tort judgment creditor appealed the confirmation order. The district court reversed and the debtor appealed to the Seventh Circuit.

The Seventh Circuit remanded the case to the bankruptcy court to consider the question of good faith and substantial payment. In this regard, the appellate court threw in a footnote that the court should consider "the equities of classifying together ordinary consumer debt and a judgment debt arising out of intentionally tortious

2. Student loans are only nondischargeable under § 523(a)(8) absent a showing by the debtor that repayment of the student loan would work an undue hardship on the debtor and the debtor's family or that the student loan, excluding any time when the debtor's repayment obligation was suspended, first became due more than seven years before the filing of the bankruptcy petition. [The 1990 amendments extended this period from five to seven years.] The debtor has not suggested that repayment of his student loan would work an undue hardship on him and his family, or that his student loan became due more than seven years before he filed his Chapter 7 case. Therefore, for purposes of this opinion, it is assumed that his student loan obligations are nondischargeable.

conduct." *Id.*, at 433, n. 22. This suggests that the Seventh Circuit believed that a Chapter 13 debtor's plan could be confirmed if it placed ordinary consumer debt in class A and nondischargeable debt in class B, and proposed to pay class B more than class A.

Given the facts of *Rimgale*, it is easy to understand the court's sympathy for the fraud victim. However, the *Rimgale* dictum failed to consider such basic questions as how the bankruptcy court should determine that the debt in question would in fact be nondischargeable in a Chapter 7 case without a trial in an adversary proceeding on the question, *See,* Fed.R.Bankr.P. 4007, 7001(6). The *Rimgale* court also failed to address the question, assuming the debtor was paying all he could afford to pay on his Chapter 13 plan, why those creditors whose claims would be dischargeable in a Chapter 7 case should receive less so that the tort creditor could be favored on account of the debtor's misconduct. The *Rimgale* court specifically rejected the notion that the "best interest" test of § 1325(b) required payment in full in a Chapter 13 of a debt not dischargeable in Chapter 7 on the grounds the holder of such a claim could collect in full from the debtor after the Chapter 7 case was over. *Rimgale*, 669 F.2d at 430. However, the suggestion of preferential payment seems to suggest that the holders of such claims are entitled to special treatment notwithstanding the failure of Congress to provide for any special priority for intentional tort claims in Chapter 7 or Chapter 13 cases. Finally, the Seventh Circuit in *Rimgale* nowhere suggests what payment to "nondischargeable" debts in Chapter 13 versus what payments to dischargeable debts in a Chapter 13 plan would amount to unfair discrimination under § 1322.

Several years later in *Smith*, the court, relying on *Rimgale*, again in dictum suggested that a state court judgment that would be nondischargeable in a Chapter 7 case (but that could be discharged in a Chapter 13 case) could be separately classified and be paid a higher percentage than other unsecured creditors. Again, the court gave no hint about how a bankruptcy court analyzing a Chapter 13 plan should determine that a given debt would be nondischargeable in a Chapter 7 case. *See,* Fed.R.Bankr.P. 4007, 7001(6).

In *Smith*, the state of Indiana obtained a $48,742 state court judgment against Smith for violating the Indiana Deceptive Consumer Sales Act, Ind.Code § 24–5–0.5–1, et seq. (1982). Shortly thereafter, Smith filed for Chapter 13 protection. Under the terms of Smith's proposed plan, the state was to receive less than 2% of its claim even though its claim comprised approximately 50% of Smith's liabilities. The state objected to confirmation of the plan, arguing the debtor filed the petition in bad faith because the debtor filed for protection under Chapter 13 solely to avoid paying the state court intentional tort judgment. In this backdrop the court wrote that the bankruptcy court should consider the circumstances in which the debt arose and whether the debt was dischargeable because, the court suggested, but did not hold, that good faith might require that this nondischargeable state court judgment based on fraud be separately classified and paid more than other unsecured claims. *Id.* at 822.

This court believes it is not bound by either *Smith* or *Rimgale* since the Seventh Circuit suggestion that a plan could separately classify nondischargeable claims and pay this class more than other unsecured claims was dictum in both cases. This court believes that the Seventh Circuit's conclusions regarding classification of nondischargeable claims would differ based on further analysis of applicable provisions of Chapter 13. If the Bankruptcy Code sanctions a plan favoring holders of nondischargeable claims, the effect is to pay the nondischargeable claims a greater percentage at the expense of those creditors holding dischargeable unsecured claims. This is true, because § 1325(b) imposes a "best efforts" requirement on a Chapter 13 debtor. If an appropriate objection is raised by a trustee or unsecured creditor, the debtor must either pay all claims in full in three years or less or, alternatively, make all of the debtor's disposable income available to

creditors through the Chapter 13 plan for at least three years.

Since the debtor in this case does not propose to pay all his creditors in full, he is presumably paying all his disposable income to the trustee. Thus the pot of money available to creditors in his Chapter 13 case is fixed. Every extra dime that goes to holders of nondischargeable claims in a Chapter 13 case is one less dime that holders of dischargeable claims get under the plan. Neither *Rimgale* nor *Smith* considered this result. In addition, both *Smith* and *Rimgale* involved the treatment of a debt not dischargeable in a Chapter 7 case but dischargeable in a Chapter 13 case. The case now before the court raises the question of whether a debt dischargeable in neither a Chapter 7 case nor in a Chapter 13 case can be favored in a Chapter 13 plan over claims dischargeable in both Chapter 7 and Chapter 13. Finally, the debt here, student loan, differs significantly from the type of debt, apparently intentional fraud claims, involved in both *Smith* and *Rimgale*. *See, e.g.,* § 523(c).

As previously noted, the *Smith* and *Rimgale* courts also both overlooked the fact that the Federal Rules of Bankruptcy Procedure provide precious little procedure for resolving the question of whether a claim is or is not dischargeable in Chapter 13 except in the unusual context of a hardship discharge under § 1328(b)(1). *See,* Fed. R.Bankr.P. 4007(d). If a debtor proposed a plan to pay all creditors the same amount in a Chapter 13 plan, could one of those creditors object to confirmation alleging its claim would be nondischargeable in Chapter 7, under, e.g., § 523(a)(2), (4), or (6) based on fraud, breach of fiduciary duty, embezzlement, larceny, or willful and malicious injury and therefore it was entitled to a greater percentage on its claims than innocent holders of claims dischargeable in a Chapter 7 case? Would such a plan objection be handled as an adversary proceeding under Fed.R.Bankr.P. 7001(6) or as a contested matter under Fed.R.Bankr.P. 3020(b)(1)? Contrary to what Seventh Circuit seemed to think in *Rimgale* and *Smith,* it is not always clear whether a claim is or is not dischargeable. Often that determination can only be made after a hotly contested trial and extensive appeals. *See, e.g., Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

If the debtor proposed to favor a creditor holding an allegedly nondischargeable claim, in either Chapter 7 or 13, in a Chapter 13 plan, could another creditor or the trustee question the dischargeability of the preferred creditor's claim? *Cf. Vaccariello v. Lagrotteria,* 43 B.R. 1007 (N.D.Ill. 1984). Would the objecting creditor have to file an adversary proceeding? Who would defend, the debtor or the creditor to be preferred? If the former, would the creditor whose claim was allegedly nondischargeable be bound by principles of res judicata or collateral estoppel should the debtor lose, and the case be converted to Chapter 7? If a creditor unsuccessfully attacked the dischargeability of another creditor's claim in the plan process, would the debtor be bound by that determination should the Chapter 13 plan be confirmed and later fail and be converted to Chapter 7? Would the debtor's contention that a claim is nondischargeable in order to justify preferring that claim in her Chapter 13 plan be a judicial admission or evidentiary admission on conversion to Chapter 7? *See, In re Cobb,* 56 B.R. 440 (Bankr. N.D.Ill.1985). If a debtor asserted a student loan is nondischargeable to prefer that creditor over other unsecured creditors in a Chapter 13 plan, and that plan was confirmed, could the debtor raise undue hardship under § 523(a)(8) as a ground for discharging that student loan in any subsequent Chapter 7 case or the failed Chapter 13 case? *See,* § 1328(c)(2). The list of procedural questions raised by the notion that claims not dischargeable in Chapter 7 or 13 should be preferred in a Chapter 13 plan is endless. Suffice it to say, the notion does not appear to have been considered by the drafters of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

The analysis of the issue of whether nondischargeable unsecured claims can be separately classified and paid more than other unsecured claims in a Chapter 13 plan must

start by recognizing that the question high-lights the clash of the two basic philoso-phies underlying the Bankruptcy Code. The Bankruptcy Code offers an honest debtor a fresh financial start. However, it also offers creditors fair treatment of their claims. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Indeed, the Seventh Circuit has held that the basic question to be answered in deter-mining whether a Chapter 13 debtor is proceeding in good faith and has proposed her plan in good faith is whether the debt-or's proposal to deal with creditor claims is fundamentally fair. *Rimgale* and *Smith, supra* at 414. Therefore, the question to be answered here is whether the debtor's proposed plan affords all of his unsecured creditors fundamental fairness in how they are treated under his proposed plan.

■ It is clear that unsecured claims may be subdivided into separate classes in Chapter 13 plan. Section 1322(b)(1) pro-vides:

> "the plan may designate a class or classes of unsecured claims as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor different-ly than other unsecured claims."[3]

It is important to note that § 1322 adopts § 1122 as governing the classification of claims in Chapter 13 plans. *Compare,* § 103. If the classification proposed by a Chapter 13 plan complies with § 1122, claims can be separately classified and ac-corded different treatment, subject only to the prohibition against unfair discrimina-tion.

---

**3.** Section 1122 provides:

> Classification of claims or interests
> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Congress can and specifically has provid-ed for separate classification of and a dif-fering treatment of certain unsecured claims. Section 1122 (and thus § 1322), specifically allows for separate classifica-tion and disparate treatment of smaller claims for purposes of administrative con-venience. § 1122(b). Section 1322 was amended in 1984 to allow for separate clas-sification and disparate treatment of con-sumer debts of the debtor where another individual acted as a cosigner on the debt. In other words, a debtor can pay more in a Chapter 13 plan to a consumer creditor who could look to any individual codebtor for payment, and may even unfairly discrimi-nate in favor of such a creditor in order to protect the codebtor from being pressured by the creditor to pay the portion of the cosigned debt the Chapter 13 plan does not propose to pay. *See,* § 1301. Thus, the trustee in this case has not objected to paying unsecured cosigned consumer debts in full while paying other unsecured claims ten cents on the dollar.

Congress did not amend § 1322 in 1990 to provide similar rights to a Chapter 13 debtor with respect to either dischargeable or nondischargeable student loans. Under the doctrine of inclusio unius exclusio alter-ius (the inclusion of one is the exclusion of another), § 1322, by specifically allowing cosigned consumer debts and small claims to be classified and treated separately from other unsecured claims without regard to unfair discrimination, apparently does not allow any *other kinds* of unsecured claims, including student loans, to be classified and treated differently than other unsecured claims unless such discrimination is fair. *Cf. In re Lawson,* 93 B.R. 979 (Bankr. N.D.Ill.1988).

It is interesting to note that several recent Court of Appeals Chapter 11 decisions appear to disapprove of the classification of unsecured creditors of equal priority in different classes in order to manipulate the provisions of the Bank-ruptcy Code. *See, e.g., Matter of Greystone III Joint Venture,* 948 F.2d 134 (5th Cir.1992); *In re U.S. Truck Co., Inc.,* 800 F.2d 581 (6th Cir.1986); *In re Holywell Corp.,* 913 F.2d 873 (11th Cir. 1990).

Neither § 1122 nor § 1322 in haec verba prohibits disparate treatment of similar unsecured claims. All that is required is that all claims included in any given class be substantially similar. Clearly unsecured student loan debt, dischargeable or not, is substantially similar to other unsecured debt, and therefore dischargeable and nondischargeable student loans can be classified with other unsecured debt. Certainly there is nothing in the Bankruptcy Code that gives student loan claims, even nondischargeable student loans, priority over any other unsecured claim. *See,* § 507. However, neither § 1122 nor § 1322 per se prohibits the debtor from placing similar claims in different classes. *In re Leser,* 939 F.2d 669 (8th Cir.1991); *Matter of Foreman,* 136 B.R. 532 (Bankr.S.D.Iowa 1992); *In re Scheiber,* 129 B.R. 604 (Bankr. D.Minn.1991); *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310 (8th Cir.1987). Thus, the debtor can, under § 1122 and § 1322 (and § 1222 as well), place unsecured student loan obligations in a different class than other unsecured debts. *Matter of Foreman,* 136 B.R. 532 (Bankr.S.D.Iowa 1992); *but see, In re Boggan,* 125 B.R. 533 (Bankr.N.D.Ill.1991) (because educational loan obligations are not dischargeable, separate classification of student loans is proper since the loan creditor will have recourse against the debtor).

The plain language of §§ 1122, 1222, and 1322 does not require a debtor to place all claims that are substantially similar in the same class. It simply requires that all claims in a class be substantially similar. The fact that claims for student loans are for the most part nondischargeable in Chapter 13 does not mean that such claims are dissimilar to dischargeable claims. Nondischargeable student loan claims enjoy no statutory priority over other unsecured claims. Congress knows how to link nondischargeability and priority. It did such with certain tax claims. *See,* § 523(a)(1)(A). It did not do so with student loan claims. The fact that the student loan claims will be paid in full after the Chapter 13 case completes and other unsecured claims will be discharged under § 1328 upon completion of the plan pay-

ments does not make those claims dissimilar. *See, Rimgale,* 669 F.2d at 426. Otherwise, a debtor would *have* to classify nondischargeable student loans separately and pay those claims a greater amount or in full in a Chapter 13 plan. Chapter 13 imposes that requirement on a debtor only with respect to claims entitled to priority under § 507. *See,* § 1322(a)(2). Nondischargeable student loans enjoy no priority under § 507. Therefore, the debtor is free to either place his student loan obligations in a separate class or classify student loans with other unsecured claims as he sees fit.

However, if the debtor chooses to classify student loans separately, his plan may not unfairly discriminate between the student loan class and the general unsecured claim class. The burden is on the debtor to prove that the classification is not discriminatory. *In re Lawson,* 93 B.R. 979 (Bankr.N.D.Ill.1988); *Matter of Foreman,* 136 B.R. 532 (Bankr.S.D.Iowa 1992). The Bankruptcy Code does not define "unfair discrimination". The courts have developed a four part test: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. *In re Leser,* 939 F.2d 669, 672 (8th Cir.1991) cited in *In re Saulter,* 133 B.R. 148 (Bankr.W.D.Mo.1991). *See also, In re Todd,* 65 B.R. 249 (Bankr. N.D.Ill.1986); *In re Foreman,* 136 B.R. 532 (Bankr.S.D.Iowa 1992); *Matter of Tucker,* 130 B.R. 71 (Bankr.S.D.Iowa 1991).

This court believes that there is no reasonable basis for the debtor to discriminate against the general unsecured claims class by paying the student loan class in full while paying the general unsecured claims class only ten percent. *Accord, Matter of Tucker,* 130 B.R. 71 (Bankr.S.D.Iowa 1991) (that student loans are nondischargeable does not, without more, supply a reasonable basis for favoring student loan creditors over other unsecured creditors); *In re Saulter,* 133 B.R. 148 (Bankr.W.D.Mo. 1991) (the nondischargeability of student

loans is not a reasonable basis for discriminatory treatment and runs counter to the plain meaning of § 523(a)(8) which is to place full responsibility for payment of student loans, absent undue hardship, on the debtor); *In re Scheiber*, 129 B.R. 604 (Bankr.D.Minn.1991) (plan paying student loan debt in full while paying only 3.5% on the remaining unsecured debt unfairly discriminated against the remaining unsecured debt and could not be confirmed). *But see, In re Freshley*, 69 B.R. 96 (Bankr. N.D.Ga.1987) (reasonable basis for discriminatory treatment of unsecured loans and student loans existed where payment of student loans was necessary to obtain new student loans so that debtor could complete his education).

If this court allowed the debtor to pay the nondischargeable student loan debt in full while paying the general unsecured claims 10%, the court would, in effect, allow the debtor to obtain the result he seeks not by granting priority to the student loan claims but by reducing the priority of the rest of the unsecured claims, *i.e.*, the dischargeable unsecured claims, to the extent of 90% of their claims. What the debtor would be doing is equitably subordinating 90% of the claims of those creditors holding dischargeable claims to the nondischargeable student loans.

This is, of course the result that *Rimgale* and *Smith* both suggest in dictum. However, the result would clearly be unfair. The Code recognizes equitable subordination of claims. *See,* § 510(c). However, except in very rare circumstances, equitable subordination requires wrongdoing by the creditor whose claim is to be equitably subordinated. *See, e.g., Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Taylor v. Standard Gas & Elec. Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). The classic test for equitable subordination of creditor claims is that set out by the Fifth Circuit in the *Mobil Steel* case. *Matter of Mobil Steel Co.*, 563 F.2d 692 (5th Cir.1977). The creditor-claimant must have engaged in some type of inequitable conduct; this conduct must have injured the creditors of the debtor or provided the creditor-claimant with an unfair advantage; and equitable subordination of the claim must not be inconsistent with the provisions of the Code. *Id.* at 699. There is no suggestion here that the debtor's creditors holding claims dischargeable in Chapter 13 have been guilty of any wrongdoing that would justify the subordination of their claims to those of holders of nondischargeable claims.

There is some recent authority allowing certain kinds of claims to be subordinated without any showing of wrongdoing on the part of the claimant. *Matter of Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir.1990); *In re Burden*, 917 F.2d 115 (3rd Cir.1990). However, those cases deal only with the treatment of tax penalties in Chapter 11 liquidation plans. The reasoning is that since such penalties would be subordinated by statute in a Chapter 7 liquidation, *see* § 726(a)(4), they should be equitably subordinated in a Chapter 11 liquidation plan to prevent the tax collector from getting a windfall at the expense of the other creditors because of the happenstance that the debtor is being liquidated in Chapter 11 rather than Chapter 7. These cases take the view that once the IRS has received payment of the actual claim for taxes, the other creditors should be repaid on their claims before the IRS gets its noncompensatory penalties. *See, Virtual Network*, 902 F.2d at 1246.

The *Virtual Network* line of cases argues against subordinating the claims of those creditors holding dischargeable claims in Chapter 13 cases to nondischargeable student loan claims. Both groups of creditors are seeking repayment of debts, not penalties. It hardly seems to be an appropriate use of equity to allow the debtor to force the holders of dischargeable claims, who are guilty of nothing more than bad judgment in giving the debtor credit, to fund his education; yet that is the actual result if the debtor is able to subordinate the claims of the holders of dischargeable claims against him to those of his student loan creditors.

The fact that Congress made student loan obligations nondischargeable in 1990

supports this conclusion. When Congress amended the Bankruptcy Code in 1990 and made student loans nondischargeable under § 523(a)(8), Congress could have amended § 1322 of the Bankruptcy Code by providing for special classification and treatment of student loans, as it did with cosigned consumer debts in 1984, or Congress could have made payment of student loans a priority in Chapter 13. Congress chose to do neither, leading this court to conclude that student loans are not to be favored in a Chapter 13 plan.

The court recognizes that its analysis in this case differs with the conclusion reached by its colleague Judge Wedoff in his scholarly analysis of classification and unfair discrimination in *In re Lawson*, 93 B.R. 979 (Bankr.N.D.Ill.1988). Of course, *Lawson* is not exactly on point since it arose before the 1990 amendments to Chapter 13, and involved the mirror image of the issue involved in the instant cases, i.e., whether the debtor could separately classify and provide more favorable treatment in a Chapter 13 plan for student loan claims that were dischargeable in Chapter 13, but not in Chapter 7. Judge Wedoff, in determining that favoring such a creditor in the context of a Chapter 13 plan was not reasonable, held that:

"a discrimination is 'fair,' and therefore permissible, to the extent and only to the extent, that it rationally furthers an articulated legitimate interest of the debtor." *Id.* at 984.

Judge Wedoff's definition of fairness would sanction virtually any Chapter 13 plan that provided preferential treatment for debts nondischargeable in a Chapter 13 case. After all, it would always be in the debtor's best interests to pay as much as possible in his Chapter 13 plan to those creditors holding claims nondischargeable in Chapter 13. The debtor's interest is clearly best served by emerging from Chapter 13 with as small a debt load as possible. However, the *Lawson* approach overlooks the fact that the concept of unfair discrimination as set forth in § 1322 is a *creditor* protection device. In fact, it raises the classic balancing that a bankruptcy court must consider in virtually all areas of the Bankruptcy Code, i.e. the need to balance the debtor's pursuit of a fresh financial start versus the creditors' right to fair treatment. *See, e.g.,* D. Baird & T. Jackson, *Bargaining After the Fall and the Contours of the Absolute Priority Rule,* 85 U.Chi.L.Rev. 738 (1988). It is not only the interests of the debtor the court must consider in this proceeding, but the interests of the debtor's creditors as well.

Clearly, from the point of view of those creditors who are to be paid 10% of what they are owed under the debtor's proposed plan, the discrimination is neither fair nor reasonable. They are to be paid less than they would otherwise be paid under the plan because of the accident that the debtor happens to have nondischargeable student loans he would like to pay in full in his Chapter 13 case so he will not have to pay any unpaid balance on his student loans after completing his Chapter 13 plan. *See* § 1328.

Only the debtor derives benefit from the proposed discrimination. Since the debtor already has received the education funded by the student loans, the other creditors do not get any benefit from the discriminatory payments such as enhancement of the likelihood of success in completing the plan due to improvement in career skills and qualifications. Here there is no balancing of relative benefits allocated to the debtor and creditors from the proposed discrimination. Instead, the scales are tipped entirely in favor of the debtor. On the facts of this case, the proposed discrimination is unreasonable in that it benefits only the debtor at the expense of the creditors.

Judge Wedoff ruled in *Lawson* that discrimination that benefits only a creditor without benefit to the debtor is unreasonable and thus unfair. If the proposed discrimination had been accepted as fair by this court, so the plan was theoretically confirmable, it would be important to know what efforts the debtor made to pay the student loans before filing his Chapter 13 petition in order to measure the debtor's good faith in filing his petition and proposing his plan. *In re Doersam,* 849 F.2d 237

(6th Cir.1988). The plan in *Lawson* was a 5–year, 10% to unsecured creditors other than student loans, 100% to student loans plan. Paying the student loans in full was detrimental to the debtor because it lengthened the plan from three to five years. However, Judge Wedoff apparently would have denied confirmation of the plan even if it had not been of any detriment to the debtor, as would be the case if the plan had been a 3 year, 10% to unsecured other than student loans, 100% to student loans plan. Such a plan, given the best effort requirement of § 1325(b), would neither benefit, nor harm a debtor. The debtor would be paying all disposable income into the plan. Since all debts were dischargeable in *Lawson*, the debtor would not care who got what as long as he got a discharge. However, since the discrimination in the plan would not benefit the debtor, under Judge Wedoff's test it would discriminate unfairly. In this case, the proposed discrimination benefits only the debtor and affirmatively harms the creditors who are being discriminated against. Where this court disagrees with *Lawson* is this court does not believe bankruptcy is only for the relief of impecunious debtors. Instead, in general and in Chapter 13 in particular, bankruptcy constantly requires a balancing of the debtor's need for a fresh financial start against the creditors' right to fair treatment. There is no such balancing in the debtor's proposed plan. Therefore, the discrimination proposed in the plan is neither fair nor reasonable and the plan cannot be confirmed.

The balance of the four part test for determining unfair discrimination in Chapter 13 classification, *supra* at 416, adds little. The debtor presumably is paying all disposable income into the plan. The proposed discrimination, therefore will have no bearing on his ability to carry out the plan. He should be able to make the payments required by the plan with or without discrimination. The proposed discrimination in no way impacts on the feasibility of the plan. *See* § 1325(a)(6).

As to whether the discrimination is proposed in good faith, good faith analysis in Chapter 13 requires the court to examine both the debtor's good faith both in filing the Chapter 13 petition and in proposing the plan. The former good faith analysis requires the court to examine the totality of the circumstances leading up to the filing of the petition. *Rimgale, supra* at 414; *Smith, supra* at 414. There is no suggestion on this record that the debtor incurred the debts in question, including the student loans, with Chapter 13 in mind. The debtor has not filed Chapter 7 recently in order to be able to use Chapter 13 without having to pay anything to creditors holding dischargeable claims. The debtor does not appear to have submitted inaccurate schedules meant to mislead the court. Other than the unfair discrimination, the debtor does appear to have been fundamentally fair in dealing with his creditors. *See, Rimgale*, 669 F.2d at 429.

As to whether the plan has been proposed in good faith, again there is no magic test of good faith. The debtor clearly has satisfied the *Rimgale* and *Smith* tests discussed above. These tests are often used to determine both good faith in filing and good faith in proposing the plan. *In re Lawson*, 93 B.R. 979 (Bankr.N.D.Ill.1988). However, the best indication of the fact that the debtor's plan was proposed in good faith is the fact that if the Bankruptcy Code specifically sanctioned unfair discrimination in favor of student loans, as it does in favor of cosigned consumer debts in § 1322, the court would confirm the debtor's proposed plan without hesitation.

Finally, the proposed discrimination is directly related to the reason underlying the discrimination, i.e., the debtor's desire to maximize his fresh start by emerging from his Chapter 13 case free of debt, including his student loans.[4]

---

4. Some cases look to whether the payments to be made to the creditors discriminated against is significant. *See, e.g., Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982). There is some doubt about whether a meaningful payment test is still applicable after the 1984 amendment adding a best effort/disposable income test to Chapter 13. *See, e.g., In re Easley*, 72 B.R. 948 (Bankr.M.D.Tenn.1987). Here the debtor is offering those of his creditors holding

The debtor relies primarily on two cases to support his argument that the plan does not unfairly discriminate against the general unsecured creditors, *Matter of Foreman,* 136 B.R. 532 (Bankr.S.D.Iowa 1992) and *In re Boggan,* 125 B.R. 533 (Bankr. N.D.Ill.1991). Both cases are distinguishable. In *Foreman,* the court held that a Chapter 13 plan did not unfairly discriminate against general unsecured claims when the plan proposed to pay student loan debts concurrently with the secured debts, while paying the other unsecured debts later in time. However, in *Foreman,* all debts were to be repaid in full, and thus the only discrimination was in the timing of the payment. The fact that all claims were to be paid 100% was of great significance in that court's decision and clearly distinguishes it from the instant case where the general unsecured creditors would be paid only 10%.

In *Boggan,* the court confirmed a plan that placed student loans in a separate class and paid the student loans in full while paying the other unsecured debts 15%. However, the parties in *Boggan* apparently did not raise the question of unfair discrimination. Instead, after deciding that separate classification of student loans was permissible, Judge Barliant focused on the "best interests" test articulated in §§ 1325(a)(4) and 1328(a) of the Bankruptcy Code. Judge Barliant quite correctly held that when unsecured claims are classified in a Chapter 13 plan and different percentages are paid to each class, no class can be forced to take payments with a present value less than the present value of what those creditors would get in a Chapter 7 case involving the debtor. Of course, the focus is on distributions under the plan versus distributions in a hypothetical Chapter 7 case. The fact that the holders of nondischargeable student loan claims might be able to collect in full from the debtor after a hypothetical Chapter 7 case

is irrelevant in the best interest analysis. *Rimgale,* 669 F.2d at 431.

## CONCLUSION

For the foregoing reasons the debtor's proposed plan discriminates unfairly against holders of dischargeable unsecured claims. Thus, the proposed plan does not accord with the provisions of Chapter 13, specifically § 1322, and confirmation of the debtor's Chapter 13 plan must be denied.

---

dischargeable claims 10% of their claims under the plan. The reason the debtor is offering 10% is the common law of Chapter 13 in the Northern District of Illinois. It is the unspoken rule in this district that any Chapter 13 plan must pay creditors at least ten cents on the dollar. The source of this rule is to say the least, un-

clear, and the validity of the rule suspect. However, her 10% is the functional equivalent of 0%. In addition, the present value of 10% over three years is considerably less than 10%. Therefore, the debtor is not offering significant payment to the creditors being discriminated against.