**In re EITEMILLER, Todd and Eitemiller, Vicki, Husband and Wife, Debtors.**

**Bankruptcy No. 91–03123–11.**

United States Bankruptcy Court, D. Idaho.

Jan. 12, 1993.

John F. Bury, Murphy, Bantz & Bury, Spokane, WA, for debtors.

David E. Eash, Huppin, Ewing, Anderson & Paul, Spokane, WA, for creditors Harvey and Colleen Schwartz.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

Creditors Harvey and Colleen Schwartz ("Schwartz's") object to the debtors' proposed Chapter 11 plan. Debtors-in-possession Todd and Vicki Eitemiller ("debtors") contend the plan meets all of the requirements for confirmation. After a hearing, two issues are now before the court: (1) whether the plan unfairly discriminates against unsecured, nonpriority creditors by wrongly classifying other claims ahead of them; and (2) whether the plan meets the "new value" exception to the absolute priority rule.

### FACTS

The facts in this case are as follows. The Schwartz's are holders of a claim for $11,197.57 against the debtors. Under the debtors proposed Chapter 11 plan, the Schwartz's are classified as Class 8, which consists of all unsecured creditors not otherwise classified by the plan. Class 6 consists of educational loans due Unipac, Inc. and the Department of Health and Human

Services. Class 7 is nonpriority IRS claims.

Debtors' propose in their plan to make the following payments to the classes at issue. The educational loans classified as Class 6 would receive $72,796.80 on a $99,-814.83 approximate balance. Nonpriority unsecured IRS debt of $400.83 scheduled as Class 7 would be paid in full. Class 8 creditors, including the Schwartz's, would receive $10.00 each.

■ The Schwartz's are the only parties who have filed a written objection to the plan. The results of balloting for the proposed plan show that Class 8 accepted the plan 75% by number of creditors, but rejected the plan 75% by amount of claims. Accordingly, the plan has been rejected by Class 8.[1]

## DISCUSSION

The first issue presented is whether the proposed classification of claims, specifically placing educational loans and nonpriority unsecured IRS debt in classifications separate from other unsecured nonpriority claims and according them a higher recovery, unfairly discriminates against the unsecured creditors.

■ The classification of claims in Chapter 11 is governed by section 1122 of the Bankruptcy Code.[2] While this section prohibits placing substantially different claims in the same class, it does not *per se* prohibit dividing similar claims into different classes. *In re Chapman*, 146 B.R. 411, 417 (Bankr.N.D.Ill.1992) (discussing 1122 as applicable in Chapter 13 case); *Rochem, U.S., Inc. v. Romaco, Ltd (In re Rochem, Ltd.)*, 58 B.R. 641, 642 (Bankr.D.N.J.1985)

(Chapter 11 case). *See also In re Caster*, 91 I.B.C.R. 174, 175 (Bankr.D.Idaho 1991) (Chapter 13 plan).

■ This does not relieve the debtors from the need to comply with other provisions of the Bankruptcy Code, one of which is the requirement the plan not discriminate unfairly against any impaired class that has not accepted the plan.[3] "Unfair discrimination" is not defined in the Bankruptcy Code. Consequently, the courts have developed a four part test to determine whether discrimination is fair:

(1) does the discriminatory treatment have a reasonable basis; (2) could the debtor carry out a plan without the discrimination; (3) is the plan and, in turn, the discriminatory treatment proposed in good faith; and (4) the treatment of the discriminated class.

*Rochem, supra,* 58 B.R. at 643. *See In re Kemp,* 134 B.R. 413, 417 (Bankr.E.D.Cal. 1991) (adopting same test). A slightly different statement of this test has been adopted by many courts, including this district, to determine unfair discrimination in the context of a Chapter 13 plan.

The test is (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. Restating the last element, does the basis for the discrimination demand that this degree of differential treatment be imposed?

*Amfac Distribution Corp. v. Wolff (In re Wolff),* 22 B.R. 510, 512 (9th Cir. BAP 1982). *See, e.g., Mickelson v. Leser (In re*

---

**1.** *See* 11 U.S.C. § 1126(c) (acceptance requires that at least two-thirds in amount of claims in any class must accept the plan for the class to have accepted the plan).

**2.** Section 1122 provides:
(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
11 U.S.C. § 1122(a).

**3.** Section 1129(b)(1) provides in part:

Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
11 U.S.C. § 1129(b)(1).

*Leser)*, 939 F.2d 669, 672 (8th Cir.1991) (same statement of test); *Chapman, supra,* 146 B.R. at 417 (same statement of test); *Caster, supra,* 91 I.B.C.R. at 175 (same statement of test). Because the tests currently used in this jurisdiction in the Chapter 13 context clarify the last prong of the test without being substantially different, this Court adopts the *Wolff* statement of the test for determination of unfair discrimination in Chapter 11 plans. The burden of proof is upon the debtors to show that the plan does not unfairly discriminate. *Wolff, supra,* 22 B.R. at 511–12; *Chapman, supra,* 146 B.R. at 417.

■ The first prong of the test requires the Court to determine if the discrimination has a reasonable basis. I conclude the plan has no such reasonable basis. The debtors present as their rationale for separate treatment of these two classes of unsecured nonpriority creditors the fact those claims are given special treatment under the Bankruptcy Code, and are subject to special discharge provisions. In other words, debtors appear to primarily justify giving these creditors better treatment because the debts are apparently nondischargeable. The words of one court examining such a situation in the context of Chapter 13 are equally applicable here:

> [T]he concept of unfair discrimination as set forth in § 1322 is a *creditor* protection device. In fact, it raises the classic balancing that a bankruptcy court must consider in virtually all areas of the Bankruptcy Code, i.e., the need to balance the debtor's pursuit of a fresh financial start versus the creditors' right to fair treatment.... It is not only the interests of the debtor the court must consider in this proceeding, but the interests of the debtor's creditors as well.

\*    \*    \*    \*    \*    \*

Only the debtor derives benefit from the proposed discrimination. Since the debtor already has received the education funded by the student loans, the other creditors do not get any benefit from the discriminatory payments such as enhancement of the likelihood of success in completing the plan due to improvement in career skills and qualifications. Here there is no balancing of relative benefits allocated to the debtor and creditors from the proposed discrimination. Instead, the scales are tipped entirely in favor of the debtor. On the facts of this case, the proposed discrimination is unreasonable in that it benefits only the debtor at the expense of the creditors. *Chapman, supra,* 146 B.R. at 419 (citation omitted) (emphasis in original). The debtors in the present case wish to pay over $72,000 on approximately $100,000 worth of claims in Classes 6 and 7, while paying creditors in Class 8 $10.00 each. Such treatment in effect subrogates the claims placed in Class 8 to the Class 6 and 7 claims, solely for the purpose of eliminating the debtors' liability for the apparently nondischargeable debt. This treatment has no reasonable basis.

■ Debtors have made much of the fact the unsecured creditors would receive nothing in a Chapter 7 liquidation. While comparison with a hypothetical Chapter 7 liquidation is relevant to the "best interest of creditors" test of section 1129(a)(7)(A)(ii), it does not give the debtors license to discriminate against creditors. The reading proposed by debtors would render the unfair discrimination language of section 1129(b)(1) a nullity; unfair discrimination would turn solely upon whether the "best interests of creditors" test were met.

The second element, whether the debtors can carry out the plan without discriminating, is not met; debtors have made no showing that discrimination in favor of student loan creditors or the IRS will in any way assist the debtors to complete their plan. The third element appears to be met; nothing appears on the record to suggest that the plan was not offered in good faith. The fourth element regards whether the basis of the discrimination justifies the degree of discrimination. Here, the basis for the discrimination (nondischargeability of some debts) does not justify the degree of discrimination (nominal payment of other debts).

The debtors having failed to meet three of the four elements of the test, the Court

finds that the debtors' proposed plan unfairly discriminates against the Class 8 unsecured creditors and in favor of the Class 6 (educational loans) and Class 7 (IRS) creditors. Consequently, the debtors' plan cannot be confirmed. *See, e.g., Chapman, supra,* 146 B.R. at 419–21 (Chapter 13 plan unfairly discriminated among classes where it provided for 100% payment to student loan class but only 10% to other unsecured classes); *Caster, supra,* 91 I.B.C.R. at 175 (where proposed Chapter 13 plan provided for much higher payment of student loans than on other unsecured debt, plan was unfairly discriminatory).

▪ The Court's holding that separate classification of these particular debts results in unfair discrimination should not be construed as a blanket holding that any discrimination in favor of nondischargeable debts is prohibited. Under certain circumstances, discrimination in favor of a nondischargeable debt is justified. *See In re Wages,* 92 I.B.C.R. 75, 76–77 (Bankr.D.Idaho 1992).[4] The issue is not whether the plan discriminates, but whether on the facts of the case that discrimination is unfair. *See Wolff, supra,* 22 B.R. at 512.

▪ The Schwartz's also challenge the proposed plan on the basis of the absolute priority rule. The "absolute priority rule" provides that no claim or interest junior to an impaired class can retain any property under the plan.[5] Debtors propose to retain otherwise nonexempt property under the plan, but contend their proposed payments of $10.00 each to unsecured Class 8 creditors falls within the "new value" exception

to the absolute priority rule. This district has recognized the continued vitality of the "new value" exception to the absolute priority rule. *Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership),* 142 B.R. 911 (D.Idaho 1992).

The new value exception was formulated in *Case v. Los Angeles Lumber Products Co., Ltd.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), where the Supreme Court stated:

> It is, of course, clear that there are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor.... Especially in the latter case did this Court stress the necessity, at times, of seeking new money "essential to the success of the undertaking" from the old stockholders. Where that necessity exists and the old stockholders make a fresh contribution and receive in return a participation reasonably equivalent to their contribution, no objection can be made....
>
> In view of these considerations we believe that to accord "the creditor his full right of priority against the corporate assets" where the debtor is insolvent, the stockholder's participation must be based on a contribution in money or in money's worth, reasonably equivalent in view of all the circumstances to the participation of the stockholder.

*Los Angeles Lumber, supra,* 308 U.S. at 121–22, 60 S.Ct. at 10 (citations and foot-

---

4. In *Wages,* Judge Pappas held that separate classification of nondischargeable child support obligations in a Chapter 13 plan was not unfairly discriminatory, even though that class would receive a higher payment than other unsecured creditors. The opinion properly noted that numerous factors, including public policy, supported such a result. 92 I.B.C.R. at 77. Because actions to recover child support are not subject to the automatic stay, failure to provide for preferential treatment in the plan could threaten the ability of the debtor to consummate the plan, while discrimination in favor of the child support would not likely significantly reduce the return to other creditors. *Id.* Applying the four-part test, the discrimination in that case was found to be not unfair.

5. Section 1129(b) provides in part:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> \* \* \* \* \* \*
>
> (B) With respect to a class of unsecured claims—
>
> \* \* \* \* \* \*
>
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b)(2)(B)(ii).

note omitted).[6] In a more recent decision regarding the scope of the new value exception, the Supreme Court held that "sweat equity" did not constitute "money or money's worth" to avoid the restrictions of the absolute priority rule.

> Viewed from the time of approval of the plan, respondents' promise of future services is intangible, inalienable, and, in all likelihood, unenforceable. It "has no place in the asset column of the balance sheet of the new [entity]." *Los Angeles Lumber,* 308 U.S., at 122–123, 60 S.Ct., at 11. Unlike "money or money's worth," a promise of future services cannot be exchanged in any market for something of value to the creditors *today.* In fact, no decision of this Court or any Court of Appeals, other than the decision below, has ever found a promise to contribute future labor, management, or expertise sufficient to qualify for the *Los Angeles Lumber* exception to the absolute priority rule.

*Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 204, 108 S.Ct. 963, 967, 99 L.Ed.2d 169 (1988) (emphasis in original) (footnote omitted).

Based on the Supreme Court's holding in *Ahlers,* this Court concludes debtors' proposed plan fails to meet the new value exception to the absolute priority rule. Todd Eitemiller is a chiropractor; the essence of the debtors' plan is for payment, over time, of the debtors' creditors from his future earnings. It is on the basis of those future payments, given that unsecured creditors would receive nothing in Chapter 7, that debtors' plan proposes to retain otherwise nonexempt property.[7] This is not a case in which the stockholders of a corporate debtor agree to pay creditors in exchange for the right to retain their ownership interest in the corporation.

This situation is exactly that dealt with in *Ahlers;* the debtors propose to retain property based on their contribution of labor to the enterprise. No new value is provided to the creditors presently, other than a promise to work and to pay the creditors from the proceeds of such work. This is not cognizable new value, and the absolute priority rule prohibits confirmation.

---

**6.** One commentator noted in connection with this case:

> Case did not confirm a new value plan. Quite the contrary, it denied confirmation on a holding that the proposed new value was not sufficient. While any number of cases purport to recognize the *existence* of a new value rule under Chapter X of the prior Act, no case has been found that *actually applies* it.

3 William Norton, Jr., Norton Bankruptcy Law and Practice § 63.13 n. 4 (1992) (emphasis in original).

**7.** In *Los Angeles Lumber,* the Supreme Court rejected the contention that the fact that creditors would do less well in foreclosure and liquidation justified the stockholders retention of an equity interest in the debtor. 308 U.S. at 123–24, 60 S.Ct. at 11.