In re Brenda SCOTT.

Bankruptcy No. 95–16023 S.

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

April 5, 1995.

Richard L. Cox, Hot Springs, AR, for RECD.

Marquis E. Jones, Little Rock, AR, for debtor.

David D. Coop, Chapter 13 Trustee.

### ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Objection to Confirmation of Plan, filed on March 3, 1995, and the Motion for Relief from Stay filed on March 6, 1995. Both of these contested matters were filed by the Rural Economic and Community Development Services ("RECD"), which holds claims secured by the debtor's residence.[1] The RECD objects to the plan provisions and asks for relief from stay in order to continue with its state-court remedies with regard to the residence. In addition, the Court has an independent duty to examine the plan to ensure that it complies with the Bankruptcy Code.

■ This is the debtor's third bankruptcy case in less than eighteen months. The first case, No. 93–16321S, was initiated on August 8, 1993, by the filing of a skeletal petition. The case was dismissed less than a month later, on September 1, 1993, apparently due to the failure to pay the filing fee and/or failure to file missing schedules.[2] The second bankruptcy case, No. 93–16440S, was filed two months later, on November 10, 1993. The docket sheet reveals that the debtor resided in this case for nearly a year, during which time she changed the amount payable to the trustee seven times, filed eight amendments to the plan, and received seven objections to confirmation by various creditors, including the RECD. The plan was not confirmed until September 8, 1994, ten months after the filing of the case. Six weeks after confirmation, the debtor voluntarily dismissed the case.

■ The instant case, her third, was filed on January 18, 1995, less than three weeks after the second case was closed. This third case was also initiated by the filing of an incomplete petition. The schedules were not filed until February 9, 1995. The plan provides that the debtor will pay $515 per month to the trustee for a period of sixty months, with several general unsecured debts to be paid in full.[3] The plan proposes to pay the RECD $119 per month towards the mortgage, and a total of $1,500 on the arrearage.[4]

1. The RECD is the successor entity to the Farmers Home Administration, the entity which originally granted a mortgage to debtor. This opinion will refer to creditor as the RECD for all periods, including the time when the mortgage was first held by the FmHA.

2. The information regarding the first and second cases is obtained from the Court's docket sheets of which the Court takes judicial notice. F.R.E. 201; *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988). Although the debtor requested that the Court take judicial notice of the files in these two cases, the files themselves were unavailable. As a general rule, if a party wishes the Court to take judicial notice of any adjudicative fact, it must supply the information or documents to be judicially noticed. *See F.R.E. 201.*

3. These are primarily student loans, described in the plan as unsecured priority debts. While such debts are not dischargeable, 11 U.S.C. § 523(a)(8), they are not priority debts, 11 U.S.C. § 507(a).

4. Since the plan provides that $50,000 per month (obviously a scrivener's error) will be paid on the arrearage, it is unknown what the debtor actually intended to pay on the arrearage. No corrected figure was given at trial.

The debtor purchased the residence in 1989 by means of a rural housing loan from the RECD, the terms of which required her to pay $324 per month to the RECD. In the twelve months of 1990 she paid only $115 on the mortgage; in the twelve months of 1991 she paid $366 on the mortgage; in the twelve months of 1992 she paid $580 on the mortgage; no payments were made in 1993.[5] The RECD instituted foreclosure proceedings which resulted in a foreclosure judgment entered in July 1993. Within a few weeks of the judgment the debtor filed her first, albeit brief, Chapter 13 case. After dismissal of that case, debtor's property was sold, on November 3, 1993. The debtor filed her second bankruptcy case on November 10, 1993. Six days later, no parties or the state court having received notice yet of the bankruptcy, the sale was confirmed and a deed issued to the RECD. In light of the second bankruptcy case, and the imposition of the automatic stay,[6] the RECD reinstated the loan and, in October 1994, accepted a payment from the trustee of nearly $2,500.

### The Motion for Relief from Stay

■ The RECD requests that this Court recognize that the order confirming sale in the state chancery court is valid and thereby grant relief from stay in order to pursue its rights as owner of the property. Alternatively, the RECD requests that the Court validate the state court order confirming sale under *Reichenbach v. Kizer* (*In re Reichenbach*), 174 B.R. 997 (Bankr.E.D.Ark.1994), *appeal filed,* No. 95–48 (E.D.Ark. Dec. 15, 1994). The first request must be denied since the state court order was in fact entered in violation of the stay such that it is invalid.

Secondly, the Court does not find that circumstances exist which militate in favor of validating the order confirming sale. In *Reichenbach,* this Court opined that actions taken in violation of the stay were "invalid" but could be validated upon a showing of special circumstances by the creditor. In general, to validate actions in violation of the stay, this, and other courts have required a showing that the debtor unreasonably withheld notice of the stay and prejudice to the creditor would result, or, that the debtor attempts to use the stay unfairly as a shield. *See Reichenbach,* 174 B.R. at 1002 and cases cited therein. In *Reichenbach,* the debtor deliberately failed to divulge that he was in bankruptcy despite the pendency of state court proceedings in which he participated. Ultimately, the property in *Reichenbach* was sold to third party purchasers. It was not until long after all parties, including the third party purchasers, had concluded their activities that the debtor claimed an interest in the property and advised the other parties and the court of his bankruptcy.

Although the debtor has shown bad faith in the filing of this bankruptcy case, there is insufficient evidence of bad faith or other egregious behavior with specific regard to the state court proceedings warranting the validation of the state court order entered in violation of the stay.[7] Moreover, there is no showing of prejudice to RECD since it reinstated the loan after the filing of the second bankruptcy and accepted a payment of nearly $2,500 on the loan.[8] The facts of this case

---

5. Although it is true that the debtor received some interest credit benefits which supplemented her payments during these years, these payments did not approach the equivalent of full, timely payments on the mortgage. Indeed, the arrearage on the mortgage is over $8,000, even after application of nearly $2,500 received from the Chapter 13 trustee during the second bankruptcy case.

6. Since the confirmation of the sale was entered after the filing of the bankruptcy, that order is "invalid" unless a proceeding is brought to validate the order. *Reichenbach v. Kizer* (*In re Reichenbach*), 174 B.R. 997 (Bankr.E.D.Ark. 1994), *appeal filed,* No. 95–48 (E.D.Ark. Dec. 15, 1994). That is the subject of the RECD's motion for relief from stay.

7. The Court also notes that there is not even an inference that the violation of the stay was in any manner wilful or deliberate. In light of the proximity in time, neither the state court nor the RECD received notice of the bankruptcy prior to the entry of the order.

8. Since RECD reinstated the loan, the Court need not address the impact upon the state court order of the debtor later dismissing her bankruptcy case. The possibility that the order would have be "validated" by that dismissal, *see In re Irons,* 173 B.R. 910 (Bankr.E.D.Ark.1994), highlights the necessity of all parties determining the effect of actions taken in violation of the stay, and determining what remedial action is necessary.

being unlike the circumstances in *Reichenbach*, the Court will not validate the state court order entered in violation of the automatic stay. The Motion for Relief from Stay will be denied.

### Confirmation of the Plan

■ The debtor has neither proposed a feasible plan, nor, it appears, can she in good faith do so. The debtor fails utterly in her provisions with regard to the RECD. The RECD is entitled to at least its monthly mortgage payment as well as cure of the arrearage with in a reasonable time. 11 U.S.C. § 1322. The debtor conceded that she is no longer eligible for a government subsidy on her mortgage payments. Indeed, since she began her new job prior to the time the plan was filed, she must have been aware when the plan was filed that she would no longer be eligible for that subsidy. The failure to provide for the full monthly mortgage payment thus appears to be in bad faith.

Another strong indicia of bad faith is the fact that this is the debtor's third bankruptcy case in less than eighteen months. The timing of the petitions with the state foreclosure proceedings and the obvious pattern of delay indicate that the debtor is not an honest debtor entitled to the extraordinary relief offered by the Bankruptcy Code. Her demeanor and actions demonstrate that, having lived virtually rent free for five years, she filed each of these bankruptcy cases to continue living rent free, or at least, to reduce her otherwise already minimal rent. Even the extraordinary relief afforded by the Bankruptcy Code does not permit this.

While it is true that the debtor has had some medical difficulties, these experiences are in the past. Her insurance covered her medical expenses. And these remaining bills are minimal. There are no good faith reasons apparent for filing this petition. The student loans are nondischargeable; the home is secured and subject to foreclosure. There is one other debt listed on the schedules, in the amount of $2,900 to an attorney. Absent a desire to continue delaying payment to the RECD, there is no reason for this debtor to be in bankruptcy.

Other indicia of bad faith include the facts that she proposes to pay her student loans in full while paying nothing to her other unsecured creditors, *see In re Chapman*, 146 B.R. 411 (Bankr.N.D.Ill.1992), and her repeated difficulty in filing complete and accurate schedules. Indeed, the schedules filed in this bankruptcy case are riddled with inconsistencies and inaccuracies. It is untenable that, by her third filing, the debtor was unable to file her schedules with the petition. Indeed, it is amazing that on this third try they are not even internally consistent.

The Court also notes that the debtor has made no provision for payment of federal and state income taxes. It would appear that on April 15 of each year of the plan, there will be amounts due and owing for taxes for which she has failed to provide, and, assuming she has complied with the Code requirement that all of her disposable income be committed to the plan, she will be unable to pay her taxes.

Finally, it is questionable whether the debtor has listed all of her assets or income. Despite being in assertedly grave financial and medical difficulty, she had the resources to remodel her home. Her vague explanations as to the source of the funds does not comport with good faith. While she stated that the funds came from gifts and loans from family and friends, none of the loans appear on her schedules. The failure to list such debts is another indication of the debtor's bad faith. Moreover, her testimony as to these sources was sufficiently vague and disingenuous as to cast doubts on the veracity of her statements.

These facts, as well as the debtor's demeanor, are telling evidence of the bad faith in the filing of this case and of this plan. The debtor has an extremely selective memory. She was able to demonstrate amazing recollection of facts which aided her but suffered memory loss of other facts. She testified with great certainty as to many facts, and, amazingly, even upon being shown documentary proof of her inaccuracy, was still certain as to her interpretation of the facts. For example, the debtor asserted that she had insurance on the residence for a six month period. The document reflected one month of insurance. The Court does not

believe this insurance sales employee's statement that she did not understand the document.

Since neither this plan nor this case were filed in good faith as required by the Bankruptcy Code, the plan cannot be confirmed and the case should be dismissed. It is

**ORDERED** that the Objection to Confirmation of Plan, filed on March 3, 1995, is SUSTAINED. The Motion for Relief from Stay filed on March 6, 1995, is DENIED. This Bankruptcy case is DISMISSED with prejudice, 11 U.S.C. § 105(a).

**IT IS SO ORDERED.**