**In the Matter of Roger HARRIS, Debtor.**

**Bankruptcy No. 88–1927–D H.**

United States Bankruptcy Court,
S.D. Iowa.

April 19, 1989.

Michael A. Williams, for debtor.

Mark Jackson, for Brinkman and Pessman Lumber Co.

Thomas J. Yeggy, for Vogel Wholesale Roofing and Supply Co.

Richard A. Bowers, trustee.

## ORDER—OBJECTIONS TO PLAN

RUSSELL J. HILL, Bankruptcy Judge.

On December 13, 1988, a hearing was held on objections to Debtor's Plan as modified. The following attorneys appeared on behalf of their clients: Michael A. Williams for Debtor; Mark Jackson for Brinkman and Pessman Lumber Company (hereinafter "Brinkman Lumber"); and Thomas J. Yeggy for Vogel Wholesale Roofing and Supply Co. (hereinafter "Vogel Roofing"). The Trustee, Richard A. Bowers, also appeared. At the conclusion of the hearing, the Court took the matter under advisement upon a briefing schedule. Vogel Roofing timely filed a brief and the Court considers the matter fully submitted.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Court, upon review of the pleadings, arguments of counsel, evidence presented and brief, now enters its findings and conclusions pursuant to Rule 7052, F.R.Bankr.P.

### FINDINGS OF FACT

1. On September 7, 1988, Debtor filed a Chapter 13 petition.

2. Debtor's statement reveals that he is self-employed as a contractor repairing fire damage and remodeling. He states that he filed a Chapter 7 three years ago and received a discharge.

3. Debtor states that he has gross wages of $1,400.00 per month and after taxes, including social security, his net monthly income is $996.00. Debtor lists monthly expenses in the amount of $735.00, which includes a monthly support payment

of $80.00. He lists his gross income for the 1987 calendar year as $7,826.00.

4. In his schedule A–1, Debtor listed the IRS as holding a $4,000 priority claim for back taxes for 1986 and 1987. In his schedule A–2, Debtor listed Iowa Department of Human Services (hereinafter "IDHS") as a secured creditor holding a $7,000 claim for delinquent child support. IDHS was the only secured creditor listed on schedule A–2. On his schedule A–3, Debtor listed 21 unsecured creditors with claims totaling $32,470.

5. In his original plan, Debtor proposed to pay $226 per month for 56 months. Under said plan, IRS was to be paid its $4,000 priority claim, IDHS was to be paid its $7,000 secured claim, and the unsecured creditors were to receive nothing.

6. On September 29, 1988, IDHS filed an objection to said plan and argued Debtor's past due child support payments of $7,275 should be paid outside the plan.

7. On September 23, 1988, Vogel Roofing, an unsecured creditor, filed an objection to confirmation and made two arguments: 1) the IDHS claim is not secured and should be listed as unsecured; and 2) under § 1322(b)(1), the IDHS claim must be dealt with in a pro-rata manner along with the rest of the unsecured claims.

8. On October 11, 1988, Brinkman Lumber, an unsecured creditor, filed an objection to confirmation on the basis that the plan period exceeded three years; the plan did not provide the same treatment for each claim within a particular class; and the plan is not proposed in good faith in that all it provides for is payment of delinquent taxes and child support.

9. On October 24, 1988, IDHS filed a withdrawal of its objection for the stated reason it filed an amended proof of claim whereby it agreed to the payment of $7,275 in back child support inside the plan as a secured priority debt.

10. On November 29, 1988, Debtor filed an amendment to schedule A–3 and listed IDHS's $7,275 claim as unsecured. Debtor noted the claim was listed incorrectly on schedule A–2 as a secured claim.

11. On December 12, 1988, Debtor filed his modified Chapter 13 plan. Debtor now proposes to pay $226.00 monthly from future earnings for a period of 60 months. The IRS claim for $4,000.00 is treated as a Class I priority claim.

12. Debtor created two separate classes of unsecured claims. IDHS's claim for $7,275.00 for delinquent child support is listed as a nondischargeable claim which is to be paid in full concurrently with the priority claim. The other unsecured class contains all other unsecured claims which are to receive nothing.

13. On December 19, 1988, Brinkman Lumber withdrew its objection to the plan.

## DISCUSSION

Bankruptcy Code § 1325(a) sets out six requirements that must be met before the Court can confirm a Chapter 13 plan including:

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(3) the plan has been proposed in *good faith* and not by any means forbidden by law[.]

11 U.S.C. § 1325(a) (emphasis added). Numerous objections were made to Debtor's plan including: 1) past due child support payments in a Chapter 13 plan; 2) different treatment of child support as compared to other unsecured claims; 3) plan payments longer than three years; and 4) lack of good faith. The Court will separately address each objection.

### A. *Plan Payments Longer Than Three Years*

■ Section 1322(c) provides that plan payments can be made for longer than three years if the court, for cause, approves a longer period of up to five years. In the case at bar, good cause has been shown for Debtor's plan to exceed three years because of his income and circumstances. Thus, since § 1322(c) is met, Debtor's five-year plan does not violate § 1325(a)(1).

### B. *Past Due Child Support Payments in a Chapter 13 Plan*

■ As a general rule, past due child support payments cannot be included in a Chapter 13 plan. *Caswell v. Lang*, 757 F.2d 608 (4th Cir.1985); *In re McCray*, 62 B.R. 11 (Bankr.D.Colo.1986). In *Caswell*, the Fourth Circuit listed three reasons for its holding: 1) state courts have exclusive control over the collection of child support; 2) any delay, even if only temporary, in enforcing the right to collect past due child support is unacceptable; and 3) inclusion of support payments in a Chapter 13 plan invites bankruptcy courts to alter or modify the state court decision concerning payment of child support. *Id.* at 610.

■ However, upon express agreement between the debtor and the recipient, a plan providing for deferred payment of back child support may be confirmed. *In re Davidson*, 72 B.R. 384 (Bankr.D.Colo. 1987). The debtor has the burden of obtaining from the recipient an express agreement to have the past due payments treated in a manner proposed in the plan. *Id.* at 389. If the debtor cannot obtain the express written approval of the recipient, then a plan proposing to defer back child support payments violates § 1325(a)(3) as not being proposed in good faith. *Id.*

■ In the case at bar, Debtor has failed to meet his burden because there is no express agreement between the parties. IDHS withdrew its objection to Debtor's plan on the basis that past due child support would be paid inside the plan as a secured priority debt. Thereafter, Debtor filed his modified plan which lists IDHS's claim as an unsecured nondischargeable claim. The parties never agreed to the treatment Debtor now proposes. Therefore, Debtor's plan violates § 1325(a)(3) as not being proposed in good faith.

### C. *Treatment of Child Support as Compared to Other Unsecured Claims*

■ Section 1322(a)(3) provides that "a plan shall—if the plan classifies claims, provide the same treatment for each claim within a particular class." Subject to § 1322(a), the plan may "designate a class or classes of unsecured claims ... but may not *discriminate unfairly* against any class so designated." 11 U.S.C. § 1322(b)(1) (emphasis added). The court must consider four factors in determining whether a particular classification is fair: 1) whether the discrimination has a reasonable basis; 2) whether the debtor can carry out a plan without such discrimination; 3) whether such classification is proposed in good faith; and 4) the treatment of the class discriminated against. *Davidson*, 72 B.R. at 386–87. Separate classification of child support obligations is not unfairly discriminatory under § 1322(b)(1). *Id.* at 387 (citations omitted).

■ In the case at bar, Debtor created two classes of unsecured claims—one for the back child support to be paid 100% on a deferred basis, and the second to include all other unsecured claims to be paid nothing. Under *Davidson*, this separate classification is not unfairly discriminatory under § 1322(b)(1). However, as noted above, unless a debtor obtains express written approval for deferred payments from the child support payment recipient, the plan violates the good faith confirmation requirement of § 1325(a)(3). Thus, even though Debtor's separate classification of unsecured claims is not unfairly discriminatory under § 1322(b)(1), the lack of an express written agreement does violate § 1325(a)(3).

### D. *Good Faith*

■ Section 1325(a)(3) requires that a debtor's plan be proposed in good faith. The court has an independent duty to evaluate the good faith of a plan under § 1325(a)(3). *In re Rimgale*, 669 F.2d 426, 431 (7th Cir.1982). Although "good faith" is not defined in the Code, the court must determine whether the plan constitutes "an abuse of the provisions, purpose or spirit of Chapter 13." *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982). The bankruptcy court must judge each case on its own facts and circumstances. *Id.*

■ One of the factors a court must consider is the percentage of payment to

unsecured creditors. *In re Kitchens,* 702 F.2d 885, 887–89 (11th Cir.1983); *Estus,* 695 F.2d at 317. Zero or nominal repayment to unsecured creditors is not sufficient by itself to violate the good faith requirements of § 1325(a)(3). *See id.* Rather, the court must consider other factors including:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Estus,* 695 F.2d at 317 (citations omitted); *see Kitchens,* 702 F.2d at 888–89.

■ In the case at bar, the Court concludes Debtor's plan was not filed in good faith for the following reasons. First, with the exception of his nondischargeable past due child support debt, Debtor proposes to pay unsecured creditors nothing. His present income indicates he has an ability to increase his income in the future which would allow him to partially pay his unsecured debts. Second, Debtor originally scheduled IDHS as a secured debt and did not amend his schedules until objection was lodged, all without explanation. IDHS withdrew its objection to Debtor's plan on the basis the past due child support would be paid inside the plan as a secured priority debt, but one month later, Debtor listed IDHS as unsecured. The Court finds this misleading.

Third, Debtor received a Chapter 7 discharge three years prior to filing his Chapter 13 petition. Under § 727(a)(8), Debtor is prohibited from receiving another Chapter 7 discharge until six years after the filing of the Chapter 7 petition. The Court finds Debtor is trying to accomplish in Chapter 13 (discharge all unsecured debts except child support) what he could not do in Chapter 7 until 1991. Finally, Debtor has the capability to satisfy his creditors in substantial measure. His plan is basically a sham and an abuse of the provisions, purpose and spirit of Chapter 13. Thus, the Court refuses to confirm the plan.

## CONCLUSION AND ORDER

WHEREFORE, based on the foregoing analysis, the Court concludes Debtor's plan violates the good faith requirement of § 1325(a)(3).

IT IS ACCORDINGLY ORDERED that confirmation of Debtor's plan is denied.