**In re Willie M. BROWN, Debtor.**

**In re Marie BUTLER, Debtor.**

**In re Cleo POLLARD, Debtor.**

**In re Myron THOMAS, Eleanor Thomas, Debtors.**

**Bankruptcy Nos. 92 B 14365, 92 B 14806, 92 B 20029 and 92 B 20758.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 12, 1993.

Sheryl A. Fyock, Offices of Jack McCullough, Chicago, IL, for Trustee.

Calvita J. Frederick, Chicago, IL, for Myron and Eleanor Thomas.

Peter Francis Geraci, J.D., Chicago, IL, for Cleo Pollard.

Melvin J. Kaplan, Chicago, IL, for Marie Butler.

Lorraine M. Greenberg & Assoc., Chicago, IL, for Willie M. Brown.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

These Chapter 13 cases have come before the Court on objections to confirmation, filed by the standing trustee. In each case, the only ground asserted by the trustee for denial of confirmation is that the plan proposes to pay student loan claims at a higher rate than other unsecured claims. The principal issue raised is whether this discriminatory treatment of unsecured claims is "unfair" pursuant to Section 1322(b)(1) of the Bankruptcy Code (Title 11, U.S.C., "the Code").[1] For the reasons stat-

---

**1.** Section 1322(b)(1) of the Code provides:

(b) Subject to subsection (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may

ed below, the Court finds no unfair discrimination in the Chapter 13 plans here, and accordingly overrules the trustee's objections.

### Jurisdiction

This court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), (b)(1) and (2), and General Rule 2.33 of the United States District Court for the Northern District of Illinois. The confirmation of plans is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### Findings of Fact

The relevant facts are undisputed. The debtors in each of the cases before the court have proposed Chapter 13 plans that classify the general unsecured claims into two classes. One class consists of student loan claims that are nondischargeable under Section 1328(a)(2). The other class consists of all nonpriority unsecured claims except student loans. In each plan, it is proposed that the student loans be paid in full, while the other unsecured claims are paid between ten and twenty percent of their allowed amount. The standing trustee has represented to the court that, apart from the preferential classifications, the plans in these cases meet all the requirements for confirmation. No creditor has objected to confirmation in any of the cases.

### Conclusions of Law

The cases now before the court present a single question: can Chapter 13 debtors who owe nondischargeable student loans pay those loans in full through their Chapter 13 plans, even though they have insufficient income to make full payment to their other unsecured creditors? A number of courts have given a negative answer to this question, but the structure and history of the Bankruptcy Code indicate that the answer should be yes: if the other requirements for confirmation are met, Chapter 13 plans may provide for payment of student loans at a higher rate than other claims.

*The uncertain case law.* The treatment of student loans in Chapter 13 has long been a troubling one for the courts. Under the Bankruptcy Code as originally enacted, student loan claims were generally excepted from discharge in Chapter 7 liquidations, pursuant to Section 523(a)(8) of the Code. However, Section 523(a)(8) did not apply to the discharge granted under Chapter 13. This led to a controversy over whether and under what circumstances Chapter 13 could properly be used by debtors to discharge student loan claims. Some courts confirmed Chapter 13 plans that proposed equal payment of all unsecured claims, including student loans, at less than the full amount due. *E.g., In re Winthurst,* 97 B.R. 457 (Bankr.C.D.Ill.1989); *In re Vensel,* 39 B.R. 866 (Bankr.E.D.Va. 1984). Other courts found that such plans failed to meet the requirement of good faith imposed by Section 1325(a)(3). *E.g., In re Geehan,* 59 B.R. 600 (Bankr.S.D.Ohio 1986); *In re Johnson,* 36 B.R. 67 (Bankr. S.D.Ill.1984). To avoid the good faith challenge (or for other reasons), debtors sometimes proposed plans that separately classified student loan claims under Section 1322(b)(1), proposing to pay the student loan claims more than other unsecured creditors. Again, the courts were divided on the appropriateness of this sort of classification. One court, stressing the public policy favoring repayment of student loans, found no unfair discrimination in preferential classification of student loans. *In re Freshley,* 69 B.R. 96, 98 (Bankr.N.D.Ga. 1987). Other courts, including this one, focussed on the interests of the debtor in holding that preferential classification of student loan claims was an unfair discrimination. *In re Cronk,* 131 B.R. 710, 711–12 (Bankr.S.D.Iowa 1990); *In re Lawson,* 93 B.R. 979 (Bankr.N.D.Ill.1988); *In re Furlow,* 70 B.R. 973 (Bankr.E.D.Pa.1987).

Since November, 1990, the Code has been amended to provide that student loan claims are nondischargeable in Chapter 13 on the same basis as in Chapter 7.[2] Thus,

treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

2. The Student Loan Default Prevention Initiative Act of 1990, part of the Omnibus Budget Reconciliation Act of 1990, amended the Chapter 13 discharge provisions of Section 1328(a) of

Chapter 13 debtors now have a substantial interest in paying nondischargeable student loans in full through their plans, in order to be free of these debts at the conclusion of their cases. Nevertheless, the judicial disagreement over the propriety of preferential classification of student loans continues, with at least three different positions taken by bankruptcy courts (including different positions within this district).

One response is that, if the other requirements for confirmation are met, a Chapter 13 plan may properly provide for student loan claims to be paid at a higher percentage than other unsecured claims. *In re Boggan*, 125 B.R. 533, 534 (Bankr.N.D.Ill. 1991) (Barliant, J.); *cf. In re Husted*, 142 B.R. 72, 75 (Bankr.W.D.N.Y.1992) (generally holding that preferential classification of nondischargeable Chapter 13 claims is permissible, holding applied to child support).

A second holding is that a Chapter 13 plan may preferentially classify student loans, but only in the manner specified by Section 1322(b)(5) of the Code, *i.e.*, curing of any default within a reasonable time and maintaining payments while the case is pending. *In re Christophe*, 151 B.R. 475 (Bankr.N.D.Ill.1993) (Schmetterer, J.) (denying confirmation of plan, but noting that Section 1322(b)(5) as a permissible type of discrimination); *In re Saulter*, 133 B.R. 148, 149–50 (Bankr.W.D.Mo.1991); *cf. In re Dodds*, 140 B.R. 542, 543–44 (Bankr. D.Mont.1992) (approving the discrimination under Section 1322(b)(5), but holding that it is not the only permissible preferential classification).

Finally, a third group of decisions, without a common rationale, holds that preferential classification of student loans constitutes unfair discrimination under Section 1322(b)(1), and so is prohibited. *In re Chapman*, 146 B.R. 411, 412–21 (Bankr. N.D.Ill.1992) (Ginsberg, J.) (holding that

the fairness of preferential classification requires a compensating benefit to the disfavored creditors); *In re Keel*, 143 B.R. 915, 916–17 (Bankr.D.Neb.1992) (finding that preferential classification of student loan claims is reasonable but that it must also be necessary for the debtor's performance under the plan to be fair); *In re Taylor*, 137 B.R. 60, 64–65 (Bankr. W.D.Okla.1992) (employing a "bright line test" to "prohibit, in a Chapter 13 plan, any discrimination in favor of nondischargeable student loan obligations over other unsecured creditors"); *In re Tucker*, 130 B.R. 71, 73–74 (Bankr.S.D.Iowa 1991) (showing of necessity required); *In re Scheiber*, 129 B.R. 604, 606–07 (Bankr.D.Minn.1991) (finding no public policy sufficient to allow preferential classification of student loans); *In re Liggins*, 145 B.R. 227, 231 (Bankr. E.D.Va.1992) (presenting no analysis, but reading the cases cited above as holding that "the nondischargeability of education debt does not justify a discriminatory payment classification for educational debt in a chapter 13 plan").

The issue is further confused by the treatment that has been given to claims for alimony, maintenance and support. Like student loans, these family support claims are excepted from discharge in Chapter 13 by Section 1328(a)(2), which incorporates the exceptions of Section 523(a)(5). Indeed, family support claims were nondischargeable in Chapter 13 as originally enacted. *See In re Estus*, 695 F.2d 311, 314 n. 5 (8th Cir.1982). However, unlike the student loans, preferential classification of support claims has been approved by nearly all of the recent opinions. *In re Leser*, 939 F.2d 669 (8th Cir.1991); *In re Benner*, 146 B.R. 265 (Bankr.D.Mont.1992); *In re Husted*, 142 B.R. 72 (Bankr.W.D.N.Y.1992); *In re Harris*, 132 B.R. 166 (Bankr.S.D.Iowa 1989) (denying confirmation on good faith grounds); *In re Whittaker*, 113 B.R. 531 (Bankr.D.Minn.1990); *In re Storberg*, 94

the Bankruptcy Code to incorporate the provisions of Section 523(a)(8), which except defined student loan claims from discharge in Chapter 7. Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 3007(b)(1); 104 Stat. 1388–28. The amendment was effective as to

cases filed after its enactment. Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 3007(b)(2); 104 Stat. 1388–28. The Omnibus Budget Reconciliation Act was enacted November 5, 1990. 104 Stat. 1388.

B.R. 144 (Bankr.D.Minn.1988); *In re Davidson*, 72 B.R. 384 (Bankr.D.Colo.1987) (denying confirmation on feasibility grounds). *Contra In re Warner*, 115 B.R. 233 (Bankr.C.D.Cal.1989).

*The inadequacy of the four-part test.* The wide range of judicial decisions here is, in the first instance, due to an ambiguity in the Bankruptcy Code. Section 1322(b)(1) of the Code expressly allows discrimination between classes of unsecured claims in Chapter 13 plans, as long as the plan does not "discriminate unfairly." [3] The Code provides no definition of unfair discrimination. However, in resolving the resulting ambiguity, the courts have most commonly applied a four-part test that has significantly added to the uncertainty. The test is set forth in *In re Leser*, 939 F.2d 669, 672 (8th Cir.1991), as follows:

> Lacking more explicit direction from Congress, courts have developed a four-part test to determine whether a proposed separate classification of unsecured claims is fair by inquiring: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

Although frequently cited, this test has also been frequently criticized. *Husted*, 142 B.R. at 74; *Lawson*, 93 B.R. at 982; *Furlow*, 70 B.R. at 977–78; and *In re Green*, 70 B.R. 164, 166 (Bankr.W.D.Ark. 1986). There are three major difficulties with the test.

The first difficulty is with the test's central focus: reasonableness. Both the first and fourth part of the test essentially ask whether the extent of discrimination is reasonable. *See Green*, 70 B.R. at 166 (pointing out that these factors are redundant). Yet reasonableness depends on the interests that might be advanced in support of any discrimination. *See In re Harris*, 62 B.R. 391, 394–96 (Bankr.E.D.Mich.1986) (pointing out that discrimination in favor of those currently providing credit is reasonable if the interest is in obtaining postpetition credit, but rejecting this as an appropriate rationale). The four-part test, however, does not indicate what interests will support a finding that discrimination is reasonable. Most pertinent to the present case is the question of whether it is reasonable for a debtor to discriminate between classes of unsecured claims for the purpose of paying in full a debt that is nondischargeable in Chapter 13. Many of the decisions involving family support have found that this purpose supports a finding of reasonableness. *E.g., Davidson*, 72 B.R. at 387 ("[T]he discrimination in favor of the payment of back child support has a reasonable basis since it pertains to a debt which is not dischargeable in Chapter 13."); *Whittaker*, 113 B.R. at 534 ("Different treatment of child support arrearage obligations has a reasonable basis. Child support obligation cannot be discharged by a Chapter 13 plan."). And even a decision that ultimately disapproved preferential classification of student loan claims ruled that discrimination in favor of nondischargeable student loan claims was reasonable. *Keel*, 143 B.R. at 916 ("[A] reasonable basis for separate classification and

---

**3.** The provisions of the Bankruptcy Code leading to this conclusion are thoroughly analyzed in *In re Leser*, 939 F.2d 669, 671–72 (8th Cir. 1991). To summarize: Section 1322(b)(1) provides that a plan may "designate ... classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated." The relevant portion of Section 1122 provides that a plan "may place a claim ... in a particular class only if such claim ... is substantially similar to the other claims ... of such class." Thus, Section 1122 requires only that each class contain similar claims; it does not require that all similar claims be in the same class. Similar claims,

then, may be placed in different classes under Section 1122, and the classes may be accorded different treatment under Section 1322(b)(1), as long as the difference does not constitute unfair discrimination. " [B]y allowing for separate classes of unsecured claims, Congress anticipated some discrimination, otherwise separate classes would have no significance. It is only unfair discrimination that is prohibited.'" *Leser*, 939 F.2d at 671–72, quoting *In re Storberg*, 94 B.R. 144, 146 (Bankr.D.Minn.1988). To this extent the decisions appear to be in agreement. See *In re Chapman*, 146 B.R. 411, 417 (Bankr. N.D.Ill.1992), and the authorities there cited.

treatment of student loans is provided by the fact that the loans are not dischargeable."). But several other student loan decisions state that the nondischargeability of a debt does not provide a reasonable basis for classifying it preferentially. *E.g., Tucker*, 130 B.R. at 73 (debtor required to "show that the discrimination has a reasonable basis beyond the fact that student loan obligations are dischargeable only to the extent allowed by § 523(a)(8)."); *Saulter*, 133 B.R. at 149. The four-part test itself offers no guidance as to which of these conflicting views is correct.

The next difficulty with the test is the uncertain nature of its second part: whether the debtor can complete the plan without the discrimination. Is the necessity of the discrimination an absolute requirement of fairness, or is necessity simply one factor that the court should take into consideration? In *In re Ratledge*, 31 B.R. 897, 899 (Bankr.E.D.Tenn.1983), the court viewed the factors as guides to discretion, and hence determined to "apply the four tests generally, without separate discussion." *Accord Harris*, 62 B.R. at 394 ("These factors are not rigid rules, but are simply flexible guidelines...."). Consistent with this approach, *Ratledge* approved a discriminatory classification despite an express finding that the debtors could complete their plan without it. *Ratledge*, 31 B.R. at 900. *Harris* comes to the same conclusion: "Although the debtors might be able to consummate a non-discriminatory plan, it is not necessarily fatal to their plan that they have not done so." *Harris*, 62 B.R. at 396. Other courts have approved preferential classifications not because it would be impossible for the debtor to perform under the plan without the discrimination, but only because it would be more difficult. *In re Perkins*, 55 B.R. 422, 426 (Bankr.N.D.Okla.1985), for example, approved preferential classification of a debt cosigned by the debtors' son, based on a belief that the debtors otherwise might attempt to pay the debt outside of their plan, in order to protect their son from creditor pressure. *Accord In re Todd*, 65 B.R. 249, 253 (Bankr.N.D.Ill.1986) (preferential classification of cosigned debt ap-

proved). However, several courts appear to view the second part of the tests as an independent standard that must be met in order for a discriminatory classification to be fair. *E.g., In re Moore*, 31 B.R. 12, 17 (Bankr.D.S.C.1983) (rejecting discrimination in favor of cosigned debt because debtors did not prove performance under the plan would be impossible without it, and "mere speculation will not justify a discriminatory classification"); *Keel*, 143 B.R. at 917 (holding that student loans must be paid pro rata with other unsecured claims "because there has been no showing that discriminatory treatment is necessary to permit debtors to complete a Chapter 13 plan."). Again, the four-part test itself provides no basis for determining which of these applications is correct.

Finally, the four-part test generates confusion through its reference to good faith. Under Section 1322(a)(3) of the Code, all Chapter 13 plans are required to be "proposed in good faith." Although the meaning of this good faith requirement is uncertain—see *In re Schaitz*, 913 F.2d 452, 456 (7th Cir.1990) ("This court has yet to take sides on the difficult question of the proper meaning to assign 'good faith' in Chapter 13."); *In re Easley*, 72 B.R. 948, 950 (Bankr.M.D.Tenn.1987) (noting the inconsistency of good faith decisions)—there is no question that good faith is an independent requirement for confirmation. If a plan is proposed in bad faith, it cannot be confirmed; if it is proposed in good faith, it still must not discriminate unfairly between classes of unsecured claims. Thus, an understanding of unfair discrimination is not advanced by including good faith as a factor. *Green*, 70 B.R. at 166.

The difficulties with the four-part test may well result from a misuse of the decision that first employed it. The test derives from the decision in *In re Kovich*, 4 B.R. 403 (Bankr.W.D.Mich.1980). *Kovich* involved two different Chapter 13 plans, one of which preferentially classified cosigned debt and the other debt owing to a landlord. The court found that the classifications did not require a denial of confirmation, reasoning as follows (4 B.R. at 407):

Pursuant to Section 1322(b)(1) [separate classification of unsecured claims] must not "discriminate unfairly." The fact that [the preferred creditors] receive more than other unsecured creditors, certainly is a form of discrimination. But it is not necessarily unfair. It may be that in order for a debtor to avail himself of a Chapter 13 instead of Chapter 7 liquidation, he will have to make special arrangement in the plan for an obligation that a friend or relative cosigned.... Likewise, because of a debtor's financial and family situation and the availability of other housing, it may be necessary to make a special provision for past due rent. Such classifications may not be unfair to other unsecured creditors because if they are not permitted the debtor may be forced to file under Chapter 7 and they may receive nothing. Therefore, the classifications are not ipso facto unfair discrimination.

Based on these considerations, the court set the plans for hearing on the fairness of their discrimination and listed a number of questions that might be relevant at the hearing on the particular plans then at issue (*id.*):

Each case must be decided on its own merits. Is there a reasonable basis for the classification? Is the debtor able to perform a plan without the classification? Has the debtor acted in good faith in the proposed classifications? Certainly the debtor should not be permitted to pay a creditor less because of ill will. Another consideration must be the treatment of the class discriminated against. Are they receiving a meaningful payment or is the plan just a sham?

Although these questions were quickly adopted as the test of fairness in discrimination,[4] they do not appear to have been so intended. The discussion that preceded the questions makes it clear that *Kovich* viewed the necessity for discrimination simply as a way in which the plans then before the court could be shown to have a rational basis. Far from holding that necessity was required for any discrimination to be fair, the court favorably cited *In re Curtis*, 2 B.R. 43, 44 (Bankr.W.D.Mo.1979) as permitting "a 100% payment on child support arrearage and 10% to other unsecured creditors ... because child support was a nondischargeable debt." *Kovich*, 4 B.R. at 406. Furthermore, in context, it is plain that the "good faith" question posed by *Kovich* was intended merely to assure that the debtor had a legitimate reason for preferential classification, as opposed to ill will or personal affection. Thus, of the four questions posed by *Kovich*, the first three related to the debtor's reason for preferentially classifying in the cases before the court. The fourth had to do with whether the debtor was making "meaningful" payments to creditors, an issue that is no longer a major area of inquiry in Chapter 13.[5] The four questions were not four parts of a test.

Because of all its problems—ambiguity, redundancy, and lack of foundation—the four-part test is not useful in determining whether discrimination between classes of claims in a Chapter 13 case is fair.

■ *The legitimate interests of the debtor as the basis for a test of fairness.* In *In re Lawson*, 93 B.R. 979, 984 (Bankr. N.D.Ill.1988), this court employed an alternative to the four-part test: that a discrimi-

---

**4.** See *In re Wolff*, 22 B.R. 510, 512 (Bankr.9th Cir.1982); *In re Dziedzic*, 9 B.R. 424, 427 (Bankr. S.D.Tex.1981).

**5.** Section 1325(b) of the Code, which was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"), addresses the concern that Chapter 13 debtors make meaningful payments into their plans. Section 1325(b) requires that Chapter 13 debtors, if requested by an unsecured creditor or by the standing trustee, either pay all of their unsecured claims in full or else pay all of their disposable income

into the plan for at least a three year period. *See In re Smith*, 848 F.2d 813, 820 (7th Cir.1988) (noting the BAFJA amendment as "eliminating some of the old factors related to minimal payments" in the context of a good faith analysis, citing *Educational Assistance Corp. v. Zellner*, 827 F.2d 1222, 1224, 1227 (8th Cir.1987)); *see also In re Chapman*, 146 B.R. at 420 n. 4 (Bankr. N.D.Ill.1992) ("There is some doubt about whether a meaningful payment test is still applicable after the 1984 amendment adding a best effort/disposable income test to Chapter 13.").

nation between classes of unsecured creditors in a Chapter 13 plan is "fair" under Section 1322(b)(1) to the extent, and only to the extent, that it rationally furthers an articulated, legitimate interest of the debtor. This test avoids the problems of the four-part test: it defines the interests that render a discrimination reasonable; it does not limit discrimination to situations in which a plan cannot be carried out otherwise; and it makes good faith a separate inquiry from fair discrimination.

But why should the interests of the debtor be controlling? The principal reason is that the right to preferentially classify claims was placed in Chapter 13 as an incentive to debtors to choose Chapter 13 for their cases. As the Seventh Circuit recognized in *In re Lybrook*, 951 F.2d 136, 137 (7th Cir.1991), the legislative history of Chapter 13 reveals that "in liberalizing the old Chapter XIII, the framers of the new (1978) Chapter 13 wanted to encourage repayment plans as an alternative to straight bankruptcy." Similarly, the Eleventh Circuit has noted that "[o]ne of Congress's goals in amending the Bankruptcy Code in 1978 was to correct several deficiencies in the old laws that discouraged or prevented debtors from opting for Chapter 13 rehabilitation." *In re Hall*, 752 F.2d 582, 590 (11th Cir.1985).[6]

To encourage the use of Chapter 13 over Chapter 7 liquidations, Congress enacted a number of provisions making Chapter 13 uniquely advantageous to debtors.[7] The right to classify unsecured debt is one of these special features. As discussed in *Lawson*, 93 B.R. at 983, and noted in *In re Gay*, 3 B.R. 336, 338 n. 2 (Bankr.D.Colo. 1980), Chapter XIII of the former Bankruptcy Act required a debtor to pay all unsecured claims without classification, and hence pro rata, just as such claims are now paid in Chapter 7 (pursuant to Section 726(b)). During the hearings on the Bankruptcy Code, Congress received testimony that this lack of flexibility was a "substantial hindrance" to the use of Chapter XIII, because debtors would not voluntarily

---

**6.** The general legislative history of Chapter 13 is discussed in some detail in *In re Estus*, 695 F.2d 311, 313–14 (8th Cir.1982). To summarize, the major difference between Chapter 13 and Chapter 7 (straight bankruptcy) is that, in Chapter 13, the debtors use postpetition personal income to pay their prepetition debts, retaining their assets, while in Chapter 7, postpetition personal income is not part of the estate that is distributed to creditors. In this way, Chapter 13 offers creditors the possibility of larger payments on their debts. H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News 1978, § 5787. However, because of concerns related to involuntary servitude and the debtor's incentives to complete the plan, Congress determined to make Chapter 13 entirely voluntary. *Id.* at 120–21. Having determined not to force debtors into Chapter 13, Congress designed its provisions to encourage debtors to make the choice of that chapter. "New Chapter 13 was enacted to provide an effective system for dealing with consumer bankruptcies and also to encourage more debtors to attempt to pay their debts under bankruptcy court supervision." *Estus*, 695 F.2d at 313.

**7.** Among these provisions are the following:

● Fully voluntary participation. A debtor cannot be forced into Chapter 13 through an involuntary petition, or by a nonconsensual conversion. 11 U.S.C. § 303(a) (involuntary cases may be filed only under Chapters 7 and 11); 11 U.S.C. §§ 706(c), 1112(d) (conversion to Chapter 13 only on request of the debtor). Once in Chapter 13, the debtor has an absolute right to convert the case to Chapter 7, and, if not previously converted to Chapter 13, to dismiss the case. 11 U.S.C. § 1307(a), (b). Only the debtor may propose a plan under Chapter 13, and so the terms of the plan may not be imposed on the debtor. 11 U.S.C. § 1321.

● Protection of codebtors. Individuals who cosigned consumer loans for a debtor in Chapter 13 are protected by a stay if the debtor proposes to pay the loan through the Chapter 13 plan, 11 U.S.C. § 1301, and, since the 1984 amendments, the debtor may discriminate in payments to holders of such cosigned debt, even if this discrimination would be unfair, 11 U.S.C. § 1322(b)(1).

● Protection of postpetition earnings. Earnings of the debtor after the commencement of the case become property of the debtor's estate in Chapter 13 until the case is closed, dismissed, or converted. 11 U.S.C. § 1306. Hence, the automatic stay applies to prevent creditors from seeking to enforce claims against these earnings. 11 U.S.C. § 362(a)(3).

● Broader, flexible discharge. The normal discharge under Chapter 13 covers many debts that are nondischargeable in Chapter 7. Compare 11 U.S.C. § 1328(a) with 11 U.S.C. §§ 523(a) and 727. Moreover, in situations of hardship, the debtor may qualify for a discharge with the same scope as that in Chapter 7, without completing plan payments. 11 U.S.C. § 1328(b).

choose to make pro rata payments on debt that they believed required special treatment. *Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary, House of Representatives*, 94th Cong., 1st Sess. 1425–26 (1976) (statement of Claude Rice), *reprinted in* 5 Resnick & Wypyski, Bankruptcy Reform Act of 1978: A Legislative History (1979); see *Lawson*, 93 B.R. at 983–84. Among the examples of claims to which a debtor might wish to accord special treatment were "back child support" and "NSF check debt subject to prosecution if not paid promptly." *Id.* After this testimony was presented, all of the bankruptcy reform legislation Congress considered allowed for classification of unsecured debt, and the legislative history reflects Congress's intent to give the debtor "great flexibility in the formulation of the plan." H.R.Rep. No. 595, 95th Cong., 1st Sess. 123 (1977), U.S. Code Cong. & Admin.News 1978, p. 6084. Put simply, Section 1322(b)(1) encourages debtors to employ Chapter 13 by allowing them to pay different amounts to different unsecured creditors, an option they would not possess in Chapter 7.

■ Unsecured creditors, therefore, have no right to pro rata payment in Chapter 13. This is a departure from otherwise applicable bankruptcy law, and some courts have expressed aversion to it. *E.g., Saulter,* 133 B.R. at 149 (commenting that discrimination between classes shifts the debtor's obligations to the creditors who receive less than pro rata payment); *Chapman,* 146 B.R. at 418–19 (suggesting (1) that discrimination in favor of one class of creditors effects an improper subordination of the others, and (2) that less than pro rata payment is only fair if there is some compensating benefit to the affected creditors). However, Congress determined generally

to allow such discrimination, as an incentive to the use of Chapter 13, and that Congressional choice should be honored.[8]

Moreover, unsecured creditors who are paid less than a pro rata amount in Chapter 13 are not left without protection. They must receive at least as much through a Chapter 13 plan as they would have received in a Chapter 7 liquidation. 11 U.S.C. § 1325(a)(4). They may demand, since they are not to be paid in full, that the debtor contribute all of his or her disposable income to the plan for a three-year period. 11 U.S.C. § 1325(b). And, finally, the unsecured creditors have the protection of the provision at issue here: the debtor must demonstrate that any discrimination between classes of unsecured creditors is fair, under Section 1322(b)(1). Thus, not all of the discriminations a debtor may wish to make are permissible. Yet the fundamental purpose for allowing discriminatory classification remains to provide the debtor with flexibility. The fairness test stated in *Lawson* addresses this purpose, allowing the debtor to make discriminations that further a legitimate interest, but denying discriminations that are arbitrary.

What interests are not legitimate? Plainly, a debtor should not be allowed to penalize certain creditors for purely subjective reasons (*e.g.*, proposing to pay a judgment creditor less because the debtor disagrees with the judgment) or to prefer others for similar subjective reasons (*e.g.*, proposing to pay friends and family members more than commercial creditors because of personal affection). Thus, prior to the 1984 amendment of Section 1322(b)(1) regarding codebtors, "many courts ... found payment in full on cosigned debts to be unfairly discriminatory (especially when the cosigner is a member of the debtor's family)...." *In re Dziedzic*, 9 B.R. 424, 426 (Bankr.S.D.Tex.1981). The 1984

---

8. See *In re Hall,* 752 F.2d 582, 590 (11th Cir. 1985), which, in holding that lien avoidance under Section 522(f) of the Code was available in Chapter 13, stated, "[W]e decline to create a disincentive that may alter the legislative balance struck between Chapter 7 and Chapter 13." *Cf. United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 245–46, 109 S.Ct. 1026, 1033, 103

L.Ed.2d 290 (1989) ("Although the payment of postpetition interest is arguably somewhat in tension with the desirability of paying all creditors as uniformly as practicable, Congress expressly chose to create that alleged tension. There is no reason to suspect that Congress did not mean what the language of the statute says.")

amendment specifically allows discrimination with respect to cosigned debt, but in other respects, subjective rationales for discrimination remain insufficient. Similarly, it may not be legitimate for a debtor to discriminate simply for the purpose of obtaining larger amounts of postpetition consumer credit. *In re Harris*, 62 B.R. 391, 393–96 (Bankr.E.D.Mich.1986).

■ On the other hand, if the debtor can point to an objective benefit to be obtained or harm to be avoided by the discrimination, consistent with the purposes of Chapter 13, the debtor's interest should be recognized as legitimate. Here, the debtor's interest is in emerging from bankruptcy free of debt, with a "fresh start." This is an objective interest entirely consistent with the purposes of Chapter 13. In discussing the need for a limit on the extent of Chapter 13 plans, Congress referred to the fresh start as "the essence of modern bankruptcy law" H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977), and its importance has long been recognized by the courts. *E.g., Local Loan Co. v. Hunt*, 292 U.S. 234, 243–45, 54 S.Ct. 695, 698–99, 78 L.Ed. 1230 (1934). Thus, a fresh start is a legitimate interest of the debtor that may be furthered through preferential classification under Section 1322(b)(1).

Indeed, if Congress's aim of encouraging the use of Chapter 13 over Chapter 7 is to be honored, debtors must be allowed to preferentially classify debt that is nondischargeable in Chapter 13. Without preferential classification, debtors who are obligated to pay debts that are nondischarge-

able in Chapter 13 will have a strong incentive to use Chapter 7 instead of Chapter 13. In Chapter 7, the debtors are only required to surrender their nonexempt assets—often nothing; they can then retain all of their postpetition disposable income, to use, if they wish, in paying the nondischargeable debt.[9] By contrast, in Chapter 13 without preferential classification, the debtors are required to pay into the plan at least the value of their nonexempt assets, and any disposable income that remains would have to be shared with the unsecured creditors pro rata, for a minimum of three years. Thus, in Chapter 13 without preferential classification, debtors may be required to devote substantial amounts of postpetition disposable income to payment of dischargeable debt, which income, in a Chapter 7, could be devoted exclusively to the nondischargeable debt.

*The family support cases.* The test of fairness based on the legitimate interests of the debtor is supported by the many decisions that hold it permissible for Chapter 13 debtors to preferentially classify family support arrearages.[10] The debtor's interest in a fresh start is, in fact, the reason given for allowing the preferential discrimination in many of the family support decisions. *E.g., Whittaker*, 113 B.R. at 534:

"Payment in full of the nondischargeable child support arrearage obligation is reasonably related to the Debtor's legitimate interest in not being burdened with a substantial debt at the completion of his Chapter 13 plan, and thus the different treatment of the child support arrear-

---

**9.** If the debtor had a significant amount of postpetition disposable income, an objection might be made to the debtor's use of Chapter 7, pursuant to Section 707(b). However, Section 707(b) itself directs that there should be a presumption in favor of granting the relief sought by the debtor, and the courts are in disagreement over its application. *E.g., Fonder v. United States*, 974 F.2d 996, 999 (8th Cir.1992); *United States Trustee v. Harris*, 960 F.2d 74, 76–77 (8th Cir. 1991); *In re Walton*, 866 F.2d 981, 982–85 (8th Cir.1989); *In re Kelly*, 841 F.2d 908, 913–15 (9th Cir.1988); *In re Green*, 934 F.2d 568, 570–73 (4th Cir.1991); *In re Krohn*, 886 F.2d 123, 126–27 (6th Cir.1989); *In re Keniston*, 85 B.R. 202, 214–29 (Bankr.D.N.H.1985). Furthermore, because motions to dismiss under Section 707(b) may

only be made by the United States Trustee or the court, they are encountered infrequently in practice.

**10.** A number of the recent decisions so holding are: *In re Leser*, 939 F.2d 669 (8th Cir.1991); *In re Benner*, 146 B.R. 265 (Bankr.D.Mont.1992); *In re Husted*, 142 B.R. 72 (Bankr.W.D.N.Y.1992); *In re Harris*, 132 B.R. 166 (Bankr.S.D.Iowa 1989) (denying confirmation on good faith grounds); *In re Whittaker*, 113 B.R. 531 (Bankr. D.Minn.1990); *In re Storberg*, 94 B.R. 144 (Bankr.D.Minn.1988); *In re Davidson*, 72 B.R. 384 (Bankr.D.Colo.1987) (denying confirmation on feasibility grounds). *Contra In re Warner*, 115 B.R. 233 (Bankr.C.D.Cal.1989).

age claim does not discriminate unfairly against the nonpriority unsecured claims...."

However, some of the decisions disallowing preferential classification of student loan claims have suggested grounds for distinguishing the family support cases. One proposed distinction is that repayment of student loans is not "as favored in public policy as are alimony and child support payments." *Scheiber*, 129 B.R. at 606. Another is that preferential classification of family support payments is necessary to allow the debtor to complete the plan, since, if these payments are not made in full, the holder of the familial support claim would not be restrained by the automatic stay from enforcing the claim against the debtor's wages and making performance under the plan impossible. *Keel*, 143 B.R. at 916.

These distinctions are not persuasive. First, the relative strength of public policy concerns regarding payment of student loans and family support is not relevant here.[11] Congress has indicated that both types of debt are equally nondischargeable in bankruptcy. The interests of the parties involved in the bankruptcy—the debtor who must pay the nondischargeable claim in full, and the creditors who may receive less than pro rata payments—are therefore the same in each situation. Nor can it be said that the needs of the supported family members require a different treatment. Current support payments are not governed by a Chapter 13 plan; the disposable income that is contributed to the plan is calculated by deducting all payments required for "maintenance or support of ... a dependent of the debtor." 11 U.S.C. § 1325(b)(2). And it has been held that the debtor may preferentially classify support

arrearages even when they are not being paid to the supported family members. *Leser*, 939 F.2d at 671–73 (preferential classification approved in order to allow full payment of family support claim assigned to county collection agency, on ground that the claim remains nondischargeable).

Similarly, the automatic stay does apply to prevent enforcement of family support claims against the postpetition earnings of a Chapter 13 debtor, so that full payment of these claims is not necessary to allow completion of a Chapter 13 plan. Section 362(a)(6) effectuates an automatic stay of "any act to ... recover a claim against the debtor that arose before the commencement of the case." Section 362(b)(2) creates an exception to this stay so as to allow the collection of family support "from property that is not property of the estate." However, postpetition earnings of a debtor in Chapter 13 are property of the estate under Section 1306(a)(2), and remain such until "the case is closed, dismissed, or converted." [12] Nor is there any assurance that a court would feel compelled to grant relief from the stay to a family support claimant. It is completely possible that the claimant would not have a compelling need for immediate payment of past due family support. The situation of the county collection agency in *Leser* is a clear example.

Again, then, it is the nondischargeable nature of the claim that justifies preferential classification of family support claims. The same justification applies to student loans.

*The good faith of student loan debtors.* It may be that the courts have accorded harsher treatment to student loan debtors than to family support debtors because of a

---

11. However, it should be noted that in a time of extraordinary concern over the federal budget deficit, there is a substantial public interest in recovering the payments that the federal government has been required to make on guaranteed student loans in default. These payments were more than $2 billion in 1989. *Association of Accredited Cosmetology Schools v. Alexander*, 979 F.2d 859, 861 (D.C.Cir.1992), citing U.S. Dep't of Educ., FY 1989 Guaranteed Student Loan Programs Data Book 72. In 1991, the government is reported to have paid $3.6 billion

for student loan defaults. Matthew Morrisey, *Banking on Students*, 25 Nat'l J. 339 (Feb. 6, 1993).

12. Section 1327(b) provides for the "vesting" of estate property in the debtor at confirmation. However, even if this "vesting" is seen as taking the property out of the estate, the automatic stay could be kept in place by providing in the plan that the property not vest in the debtor, an option expressly allowed under Section 1327(b).

concern that the student loan debtors are acting in bad faith. A comparison of commentary in two cases suggests such a concern. A decision allowing preferential classification of family support, *In re Storberg*, 94 B.R. 144, 147 (Bankr.D.Minn.1988), refers to the debtor's plan as "an admirable endeavor." A decision denying preferential classification of student loans, *In re Saulter*, 133 B.R. 148, 149 (Bankr.W.D.Mo. 1991), refers to the debtor's plan as an attempt "to exit bankruptcy free of student loan liability at the expense of other unsecured creditors." The basis for this difference in attitude may be expressed in *In re Geehan*, 59 B.R. 600, 601 (Bankr.S.D.Ohio 1986):

> This court is particularly desirous of preventing debtors from avoiding the obligation incurred by loans for educational purposes when debtors have the means, potential, and ability to repay student loans which have permitted them to prepare themselves for well-paying positions in business and the professions.

It is certainly possible that student loan debtors may be acting in bad faith. For example, a student might deliberately make lavish use of unsecured credit extended in anticipation of a lucrative career, and then file a Chapter 13 case just as that career begins. However, family support debtors may also act in bad faith, deliberately withholding needed payments from their dependents while they live luxuriously, and filing bankruptcy only when apprehended. In neither situation are the courts required to tolerate abuse of the bankruptcy system. As noted above, good faith is separate requirement for Chapter 13 plans, distinct from fairness in discrimination. Thus, even though the discrimination in the case of a student loan (or support) debtor is fair, the plan may be denied confirmation because of a lack of good faith. See *In re Doersam*, 849 F.2d 237, 238 (6th Cir.1988), which dealt with a computer science graduate whose Chapter 13 plan sought to discharge $15,000 in student loans; the debtor was found to have acted in bad faith, at least partly because she filed the case before she had made a single payment on the loans, or had even graduated.

However, it certainly cannot be said that all cases involving preferential classification of student loans are filed in bad faith. For example, a recent graduate may take on a good job, and, using credit obtained in reliance on that job, incur substantial debt in setting up a household, while paying the student loans. If that debtor is then unexpectedly laid off, both the student loans and substantial additional debt will be due. Such a debtor may, in complete good faith, seek to discharge all of the indebtedness in a Chapter 13 case. The courts should not discourage such a filing by ruling that preferential classification of student loans is unfair.

*In re Saulter*, 133 B.R. at 150, also suggests that, by making student loans nondischargeable in Chapter 13, Congress intended to penalize the student debtors, requiring them to make full payment of their student loans *after* making pro rata payments to all unsecured creditors through their Chapter 13 plans. However, there is no indication that Congress believed that student loans debtors should be penalized. Several types of debt that remain dischargeable in Chapter 13 are more inherently blameworthy than default in student loans.[13] Moreover, if punishment were the purpose, it would anomalous that this punishment could be avoided by the happenstance of a cosigner on the loans. See *In re Foreman*, 136 B.R. 532, 535 n. 1 (Bankr. S.D.Iowa 1992), noting the potential application to student loan claims of the Code's express allowance of preferential classifications of cosigned debt. Rather, in making student loans nondischargeable in Chapter 13, Congress intended to assure their payment. Preferential classification of student loans in Chapter 13 is consistent with that aim.

In the present case, the only suggestion of bad faith on the part of any of the

---

13. Debts incurred by fraud, breach of fiduciary duty, and intentional injury are all excepted from discharge in Chapter 7, but not in Chapter

13. Compare 11 U.S.C. § 523(a)(2), (4), (6) with 11 U.S.C. § 1328(a).

debtors is that they filed plans proposing preferential classification of their student loans. The trustee has represented to the court that he would recommend confirmation but for the classification. These, then, are not cases in which the debtors have been shown to have engaged in any misconduct or abuse of the bankruptcy system in connection with their bankruptcies. *Cf. Chapman*, 146 B.R. at 420 (discussing good faith requirements and finding that student loan debtors did not lack good faith).

*Other sections of the Code.* The remaining arguments in favor of limiting preferential classification of student loans rely on other sections of the Bankruptcy Code. *In re Saulter*, 133 B.R. 148, 150 (Bankr. W.D.Mo.1991), allows preferential discrimination only under the terms of Section 1322(b)(5) of the Code. This provision was included in Chapter 13, according to the legislative history, to deal with long term debt "such as mortgage debt." H.R.Rep. No. 595, 95th Cong., 1st Sess. 429 (1977). Certain mortgage claims are excepted from Section 1322(b)(2), which allows a Chapter 13 debtor to modify secured claims in a plan. Section 1322(b)(5) allows a debtor to deal with mortgage debt (as well as other long term debt) by curing any default within a reasonable time, and by maintaining current payments; it is only applicable to claims on which the last payment is due after the date on which the final payment under the plan is due. See *In re Roach*, 824 F.2d 1370, 1374–79 (3d Cir.1987) (discussing the function of Section 1322(b)(5) with respect to mortgages). When student loans fit within the scope of Section 1322(b)(5), a debtor has the option of employing it. However, this is a right of the debtor distinct from the right to preferentially classify claims under Section 1322(b)(1). Nothing in the history or structure of the Code suggests that the long term debt provisions of Section 1322(b)(5) define or limit the right to preferentially classify unsecured debt in Section 1322(b)(1). Such a limitation, moreover,

would produce entirely arbitrary results: where the last payment on a student loan became due before the final payment under the debtor's plan, Section 1322(b)(5) would not apply, and so, presumably, no preferential classification would be possible under *Saulter.* However, if a single loan payment were due after the last plan payment, then the debtor could pay any arrearages through the plan, no matter how great a preference that required. This interpretation, which would favor those debtors who default early in their loans and incur substantial defaults before filing bankruptcy, is not persuasive.

Finally, in *In re Chapman*, 146 B.R. 411, 418–19 (Bankr.N.D.Ill.1992), the court points to several other provisions of the Code as relevant to interpretation of the right to preferentially classify in Section 1322. First, the court argues that Section 510 of the Code would not allow other unsecured debt to be equitably subordinated to the payment student loans. However, Congress gave no indication that Section 1322(b)(1) was to be interpreted by reference to Section 510. If equitable subordination were sufficient to deal with all situations in which debtors might wish to preferentially classify unsecured claims, Section 1322(b)(1) would be surplusage. *Chapman* also notes that Congress, in connection with the amendment making student loans nondischargeable in Chapter 13, could have also either made student loans payable as a priority (under Section 1322(a)(2)), or made student loans another express exception to the requirement of fair discrimination (like the exception for cosigned debt already in Section 1322(b)(1)). Again, however, these observations do not address the question of the meaning that should be accorded the debtor's right to preferentially classify. Moreover, the observations are misdirected. The majority of decisions prior to the 1990 student loan amendment held that family support claims not dischargeable in Chapter 13 could be preferentially classified.[14] If Congress ac-

---

14. *In re Harris,* 132 B.R. 166 (Bankr.S.D.Iowa 1989) (denying confirmation on good faith grounds); *Storberg,* 94 B.R. 144; *Davidson,* 72

B.R. 384 (denying confirmation on feasibility grounds); *In re Haag,* 3 B.R. 649 (Bankr.D.Or. 1980); *In re Curtis,* 2 B.R. 43 (Bankr.W.D.Mo.

cepted those decisions, and understood that Section 1322(b)(1) allowed preferential classification of claims that were not dischargeable in Chapter 13, there would have been no need for Congress to enact express legislation allowing preferential classification of student loans.

The other sections of the Code cited in the opinions disallowing preferential classification of student loans thus do not provide a basis for interpreting Section 1322(b)(1).

### Conclusion

■ In Section 1322(b)(1) Congress accorded Chapter 13 debtors a right to classify the unsecured claims that were to be paid through their plans, and to pay some of those claims at a higher rate than others. This right was intended to encourage use of Chapter 13. The limitation imposed on that right by the "unfair discrimination" provision must be interpreted in a way that allows Section 1322(b)(1) to serve its intended purpose. Thus, debtors should be allowed to make preferential classifications when the resulting discrimination rationally furthers a legitimate interest of the debtors. In the cases now before the court, the debtors have a legitimate interest in paying their nondischargeable student loans in full through their Chapter 13 plans, so that they may complete their plans free of debt. Accordingly, their plans do not unfairly discriminate by providing for full payment of student loans and proportionately smaller payments of other unsecured claims. Because this classification is the only ground asserted as a basis for denial of confirmation, and because it appears that all of the other requirements for confirmation—including good faith—have been met, the objections of the standing trustee are overruled, and the debtors' plans are confirmed. Separate orders will be entered in conformity with this decision.

1979). *Chapman's* limitations on the debtor's right to preferentially classify cannot be recon-

ciled with these family support decisions or the more recent ones cited above, at note 10.